ANNA CORCORAN, Appellant, v. B. O. JERREL, Appellee.

LIBEL AND SLANDER: Testimony Before Commissioners of Insan-
ity. Nonmalicious testimony by a physician before the com-
missioners of insanity, touching the insanity of a person under
investigation, is privileged.

INSANE PERSONS: Notice and Personal Presence. Proceedings
to determine the sanity of a person may be legally had before
the commissioners of insanity, without the presence of, and with-
out notice to, the person under investigation; and in such case
it will be presumed that notice would have accomplished no pur-
pose, and that the personal presence of such person would have
been injurious to such person.

*Appeal from Mahaska District Court.—JOHN F. TALBOTT,*
Judge.

FEBRUARY 19, 1919.

THIS is an action for damages claimed to have resulted
from the publication of alleged libelous statements. The
court, at the close of the evidence, sustained defendant's
motion for a directed verdict, and plaintiff appeals.—*Af-
firmed.*

*C. W. Prince, E. A. Harris, J. N. Beery, J. E. Westfall,*
and *T. R. Wilkie,* for appellant.

*Burrell & Devitt,* and *Dutcher, Davis & Hambrecht,* for
appellee.

STEVENS, J.—On November 2, 1914, Daniel Corcoran,
brother of plaintiff, caused an information, addressed to
the commissioners of insanity, to be filed in the office of
the clerk of the district court of Mahaska
County, alleging that plaintiff was insane,
and a fit subject for custody and treatment
in the state hospital. A warrant was issued
and delivered to the sheriff of said county, commanding

1. LIBEL AND
SLANDER: tes-
timony before
commissioners
of insanity.

him to take her into custody, and bring her before the com-
missioners. The return of the sheriff is not dated, but it
certifies that he took plaintiff into custody. She was not,
however, taken before the commissioners. Dr. J. C. Dar-
ranger, a practicing physician, was appointed by the board
for that purpose, and made a personal examination of plain-
tiff and certified in writing to the commissioners that, in
his opinion, she was a fit subject for custody and treat-
ment at the hospital. The defendant, Dr. Jerrel, who had
previously been employed as her physician, was subpoenaed,
sworn, and examined upon the trial before the commis-
sioners. His testimony was reduced to writing, and signed
by him. He testified that, in his judgment, plaintiff was
insane, and should be sent to the hospital for proper care
and treatment. All of the above proceedings were had on
the day the information was filed. On the following day,
plaintiff was taken by the sheriff to the hospital at Mt.
Pleasant, where she was confined for a period of about
five months, when she was paroled to her mother; and later,
she was discharged as cured. Plaintiff, in her petition,
demands damages in a large sum, alleging that the state-
ments uttered and signed by defendant before the commis-
sioners were false, malicious, and libelous. The principal
defense relied upon by counsel for appellee is that the state-
ments complained of were made as a witness under oath
upon the trial, and were, therefore, privileged.

Plaintiff seeks to avoid the plea of privilege upon the
ground that no notice was served upon plaintiff of the pro-
ceedings before the commissioners, and that same were
wholly void. It is conceded that no notice
2. INSANE PER-
SONS: notice
and personal
presence.
of the proceedings before the commission-
ers was served upon plaintiff, and that she
was not taken before them. The statute
does not require notice of the filing of an information alleg-
ing insanity, or of trial thereon, to be served upon the per-

son whose sanity is to be investigated. Section 2265 of the Code provides that the accused shall be taken before the commissioners, unless they shall be of the opinion that to do so would probably be injurious, or attended with no advantage to the person alleged to be insane, in which case the hearing may be conducted without his presence. Any citizen of the county, or relative of the person alleged to be insane, may appear, and resist the application in person, or by counsel.

The record does not disclose an affirmative finding by the board that the condition of plaintiff was such that it would be injurious for her to be present at the trial, or that same would not be of advantage to her; but presumptively, such was the judgment and finding of the commissioners. While the legislature has not made provision for notice of the hearing before the commissioners, it has made ample provision for safeguarding persons thus accused. Section 2267 of the Code provides for an appeal from the finding of the commissioners to the district court, and Code Section 2268 requires that the accused be discharged from custody, pending such appeal, unless the commissioners find that his condition is such that he cannot, with safety, be allowed to go at large. Code Section 2304 provides that, upon petition to a district judge, a commission may be appointed to examine a person confined in a hospital, and determine whether he is insane; and this proceeding may be repeated every six months. Section 2306 of the Code also provides, in substance, that all persons confined as insane shall be entitled to the benefit of a writ of habeas corpus, and that the question of insanity shall be decided at the hearing thereon.

As we understand the contention of counsel for appellant, it is not claimed that the statements of defendant would not have been privileged if due notice of the proceedings had been served upon plaintiff. We held in *Chav-*

*annes v. Priestley,* 80 Iowa 316, that the statute does not require the service of notice, and that the proceedings are not invalid without notice. In that case, the court said:

"We assume, of course, that no importance is attached to an idle form of notice in such a case; as where it would not be understood because of the infirmity, or the notice, for any reason, be merely formal. The law sometimes provides for these formal notices, but it is in anticipation of the results not to be contemplated in this class of proceedings, with the precautionary provisions of the statute under which they are conducted. The law requires that a physician shall visit the person, and examine him, and shall confer with relatives upon the subject; so that, in every case, there is actual notice to relatives, who may be present, and would be likely to take an interest in behalf of the person. Any citizen of the county, or relative, may appear and resist the application, and a full and free inquiry is permitted. The law and the courts are so jealous of the rights of persons, both as to liberty and property, that they view with distrust any proceedings that may affect such rights in the absence of notice; and to our minds this same jealousy pervades the statute in question; and the ruling consideration in allowing these proceedings, in the absence of the party and without notice, is personal to him, and designed for his interest. It is not a case in which he is adjudged at fault, or in default, and for which there is a forfeiture of liberty or property, but only a method by which the public discharges its duty to a citizen. The misfortunes of citizens sometimes place them where, for their care and preservation, restraints are necessary, and such restraints are even justified at the hands of private persons. They are not, in such cases, 'deprived of liberty,' within the meaning of the Constitution; and plaintiff bases his claim in this respect upon the constitutional provision

that 'no person shall be deprived of life, liberty or property without due process of law.' "

We held in *County of Black Hawk v. Springer,* 58 Iowa 417, that:

"The inquest of lunacy by a board of commissioners is in no sense a criminal proceeding. The restraint of an insane person is not designed as punishment for any act done. The insane are, by the law, taken into the care and custody of the state, for treatment for their unfortunate infirmity. In our opinion, whatever may be thought of the power of the legislative department of the state to provide a special tribunal for the examination of persons alleged to be insane, the safeguards and limitations provided by our laws for the correction of any abuse which may arise from the acts of the commissioners, are ample for the protection of the citizen."

There is nothing in the record to indicate that defendant was actuated by improper motives, or that he acted in bad faith toward plaintiff. He was subpoenaed, sworn, and examined as a witness, and his testimony was corroborated by that of other witnesses. Whether an action for libel could be maintained against him, if the proceedings had been, for some reason, invalid, we need not determine, as that question is not before us. The proceedings before the commissioners were, so far as the record discloses, in all respects regular and valid, and all of the statements made by the defendant were clearly privileged. There is no error in the record, and the judgment of the court below is—*Affirmed.*

LADD, C. J., GAYNOR and SALINGER, JJ., concur.