AVY AGNES JARMAN v. DR. V. D. OFFUTT.

(Filed 24 February, 1954.)

**1. Libel and Slander § 7c—**

The general rule is that a defamatory statement made in the due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice.

**2. Same—**

A judicial proceeding within the rule of absolute privilege is not restricted to trials in civil actions or criminal prosecutions, but includes every proceeding of a judicial nature before a competent court, administrative agency, or officer clothed with judicial or *quasi*-judicial powers, including statements made in an affidavit pertinent to a judicial proceeding or which the affiant has reasonable grounds to believe is pertinent.

**3. Same—**

A lunacy proceeding is a judicial proceeding within the rule of absolute privilege.

**4. Same—**

In a lunacy proceeding instituted by the husband of the alleged incompetent by proper affidavit sworn to before the clerk, G.S. 122-42, a state-

ment of a physician sworn to before a notary public, G.S. 122-43, is absolutely privileged and will not support an action for libel.

**5. Insane Persons § 1—**

While the initial affidavit-application under G.S. 122-42 must be sworn to before the clerk or a deputy clerk, the affidavits of physicians under G.S. 122-43 may be sworn to before a notary public, and the statute permits affiant in the affidavit-application to act as intermediary in carrying the papers to and from the physician for the execution of the physician's affidavit.

**6. Trial § 24a—**

Where plaintiff's evidence establishes as a matter of law an affirmative defense set up by defendant, nonsuit is proper.

BOBBITT, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Harris, J.*, at 15 June Term, 1953, of LENOIR. Civil action for libel.

The gravamen of the plaintiff's cause of action as alleged in the complaint is that the defendant, a practicing physician, maliciously and without justifiable cause signed and published a statement that the plaintiff was suffering from a mental disease and was a fit subject for admission into a hospital for the mentally disordered.

The defendant, by answer, admits signing the statement on 6 June, 1951, but alleges by way of defense that shortly prior thereto the plaintiff had been under his direct care, observation, and treatment in a hospital for a period of about eight days; that the plaintiff "was suffering from an unstable and nervous condition which is . . . in medical terms called . . . 'anxiety neurosis,' a mental and nervous condition which, among other symptoms, is sometimes indicated by a marked state of anxiety, by an attitude of great magnification of any physical illnesses, by unjustifiable attention given to known minor troubles, by a sense of persecution, and by general intellectual deficiency, all of which symptoms were present in the plaintiff's case . . ."; that about three weeks after the plaintiff was released from the hospital, her husband, Clyde Jarman, came to defendant's office "with a blank form of affidavits and questionnaires," and advised the defendant that his wife had attacked him with a butcher knife in their home, and requested the defendant, as her recent attending physician, to fill in and sign one of the affidavits; "That in these circumstances, and being . . . of the opinion the plaintiff needed such treatment as her . . . husband . . . expected to make available to her, this defendant did fill in and sign an affidavit constituting part of the entire Exhibit . . ."; that the defendant's act in signing the affidavit was part of the required procedure through which the plaintiff might be admitted to a hospital for mental treatment and "the affidavit was signed only as a part of, and one

step in, such program, . . . to the end that the plaintiff, his recent patient, could receive treatment which . . . defendant believed she greatly needed."

The material facts as developed by the plaintiff's evidence may be summarized as follows: For some months prior to 8 May, 1951, the plaintiff had been under the care and treatment of her family physician, Dr. Joseph S. Bower, at Pink Hill, where they both reside. On or about 8 May, 1951, Dr. Bower referred the plaintiff to the defendant, medical practitioner in the City of Kinston, and the plaintiff that day was admitted to the Lenoir County Hospital, located in Kinston. The plaintiff remained in the hospital under the defendant's direct care and observation from 8 May until 17 May, 1951. During this period the defendant saw and observed her twice each day, and sometimes more. When the plaintiff left the hospital on 17 May, 1951, she was accompanied home by her husband, Clyde Jarman.

On 6 June, 1951, the plaintiff's husband appeared before John S. Davis, Clerk of the Superior Court of Lenoir County, and made affidavit, on printed form, as follows:

AFFIDAVIT OF MENTAL DISORDER TO PROCURE ADMISSION.

DO NOT BRING OR SEND PATIENT TO HOSPITAL UNTIL TOLD TO DO SO BY SUPERINTENDENT.

STATE OF NORTH CAROLINA, LENOIR COUNTY.

The undersigned makes oath that he has carefully observed Mrs. Avy Agnes Jarman, and believes her to be mentally disordered person and to be, in the opinion of the undersigned, a fit subject for admission into a Hospital for the mentally disordered.

CLYDE D. JARMAN, Affiant.<br>(State relationship, if any)<br>Husband<br>Pink Hill, N. C.

Sworn and subscribed before me this 6th day of June, 1951.

JOHN S. DAVIS (C.S.C.)

Thereafter the defendant (on printed form appearing as a part of the same document as the foregoing affidavit of Clyde D. Jarman), made affidavit before notary public John W. Farabow as follows:

STATE OF NORTH CAROLINA, LENOIR COUNTY.

The undersigned makes oath that he is licensed to practice medicine by the State of North Carolina, and that on May 8 to May 17, 1951, he care-

fully examined Avy Agnes. ......................and believes him to be suffering
from a mental disease, and to be, in the opinion of the undersigned, a fit
subject for admission into a hospital for the mentally disordered.

V. D. OFFUTT, M.D., Affiant<br>Kinston, N. C.

Sworn and subscribed before me this 6 day of June, 1951.
    (LS)                                    JOHN W. FARABOW, N. P.
My Commission Expires: July 12, 1952.

The printed form on which both the foregoing affidavits appear also
contains form affidavit to be made by a second physician, like the one
made by the defendant. But the form for the second physician's affidavit
was never filled in.

This printed form for admission to a State mental hospital, executed by
the plaintiff's husband before the Clerk of the Superior Court with sup-
porting affidavit made by the defendant before a notary public, was
found—exactly when not appearing—folded up and sticking behind a
tool cabinet in the husband's barber shop by a daughter of the plaintiff,
now deceased, who had gone to the barber shop with the plaintiff. An-
other daughter of the plaintiff testified that her deceased sister, who
found the petition, showed it to her and that she "read it . . . and knew
what it was and knew the meaning and import of the words."

The plaintiff testified in substance: That she went to see the defendant
the day her daughter gave her the petition; that she asked him to tell her
what he had found wrong with her while she was under his care at the
hospital; that he told her she had diabetes and enlarged liver; that she
then confronted him with the petition and asked him why he had signed
the affidavit to the effect that she was mentally diseased and a fit subject
to be sent to a mental institution; that after some exchange of words, he
stated that her husband told him she had assaulted him with a butcher
knife, and that he signed the affidavit "just to get shed of" her husband
and that "he knew . . . Dr. Bower would not sign it"; that she then
asked the defendant, " '. . . did you see or hear anything by my actions
from the 8th until the 17th of May that would have made you think I
was insane?' and he said, 'No, ma'am, I certainly didn't. I couldn't tell
whether you were crazy or not.' "

At the close of the plaintiff's evidence the defendant moved for judg-
ment as of nonsuit. The motion was allowed.

From judgment in accordance with the foregoing ruling, the plaintiff
appealed.

*J. Harvey Turner and R. S. Langley for plaintiff, appellant.*
*John G. Dawson for defendant, appellee.*

JOHNSON, J. For the purpose of decision, it may be conceded that ordinarily the publication of written words imputing insanity or impairment of mental faculties is libelous *per se*. 33 Am. Jur., Libel and Slander, Sec. 51; Annotation: 66 A.L.R. 1257. Also, for the purpose of decision it may be conceded that, nothing else appearing, a defamatory communication made to a relative of the defamed person is actionable. See Annotation: 25 A.L.R. 2d 1388.

In the case at hand the defendant places chief stress on the contention that the alleged defamatory statement was made in a judicial proceeding, and that therefore he is entitled to complete immunity under the doctrine of absolute privilege. We rest decision on the question raised by this contention.

The general rule is that a defamatory statement made in due course of a judicial proceeding is absolutely privileged and will not support a civil action for defamation, even though it be made with express malice. *Ramsey v. Cheek*, 109 N.C. 270, 13 S.E. 775. See also *Harshaw v. Harshaw*, 220 N.C. 145, 16 S.E. 2d 666; *Mitchell v. Bailey*, 222 N.C. 757, 23 S.E. 2d 829; 53 C.J.S., Libel and Slander, Sec. 104, p. 168; 33 Am. Jur., Libel and Slander, Sec. 146.

As to what constitutes a judicial proceeding within the rule of absolute privilege, it is generally held that privilege is not restricted to trials in civil actions or criminal prosecutions, "but includes every proceeding of a judicial nature before a competent court or before a tribunal or officer clothed with judicial or *quasi*-judicial powers." 53 C.J.S., Libel and Slander, Sec. 104 (b), p. 169. See also 33 Am. Jur., Libel and Slander, Sec. 147.

Ordinarily, statements made in an affidavit which are pertinent to matters involved in a judicial proceeding, or which the affiant has reasonable grounds to believe are pertinent, are privileged, and, although defamatory, are not actionable. *Perry v. Perry*, 153 N.C. 266, 69 S.E. 130; 33 Am. Jur., Libel and Slander, Sec. 152. See also Annotations: 12 A.L.R. 1247, 1250; 81 A.L.R. 1119.

And it is generally held that a lunacy proceeding is a judicial proceeding within the rule of absolute privilege. *Corcoran v. Jerrel*, 185 Iowa 532, 170 N.W. 776, 2 A.L.R. 1579; *Perkins v. Mitchell*, 31 Barb. (N.Y.) 461; 53 Am. Jur., Libel and Slander, Sec. 148; Annotations: 2 A.L.R. 1582; 66 A.L.R. bot. p. 1257. See also *Hodson v. Pare*, 1 Q.B. (Eng.) 455.

In *Corcoran v. Jerrel, supra,* it was held that the testimony of a physician before a lunacy commission was privileged, though no notice of the lunacy proceeding was given to the alleged lunatic, it appearing that the proceeding had been conducted according to law.

In the case at hand the lunacy proceeding in which the defendant made affidavit was instituted by the plaintiff's husband under the statutory procedure prescribed by G.S. 122-42 *et seq.*

G.S. 122-42 provides: "When it appears that a person is suffering from some mental disorder and is in need of observation or admission in a State hospital, some reliable person having knowledge of the facts shall make before the clerk of the superior court of the county in which alleged mentally disordered person is or resides, and file in writing, on a form approved by the North Carolina Hospitals Board of Control, an affidavit that the alleged mentally disordered person is in need of observation or admission in a hospital for the mentally disordered, together with a request that an examination into the condition of the alleged mentally disordered person be made.

"This affidavit may be sworn to before the clerk of the superior court, or the deputy clerk of court."

G.S. 122-43, in so far as material, is as follows: "When an affidavit and request for examination of an alleged mentally disordered person has been made, . . . the clerk of the superior court . . ., shall direct two physicians duly licensed to practice medicine by the State . . ., to examine the alleged mentally disordered person . . . in order to determine if a state of mental disorder exists and if it warrants commitment to one of the State hospitals or institutions for the mentally disordered. If the said physicians are satisfied that the alleged mentally disordered person should be committed for observation and admission into a hospital for the mentally disordered, they shall sign an affidavit to that effect on a form approved by the North Carolina Hospitals Board of Control.

"The affidavit may be sworn to before the clerk of the superior court, the assistant clerk of the superior court, or the deputy clerk of court, *or a notary public.*" (Italics added.)

G.S. 122-46 provides in part: "When the two physicians shall have certified that the alleged mentally disordered person is in need of observation and admission in a hospital for the mentally disordered, and after the clerk has heard all proper witnesses, he shall issue an order of commitment . . ., which shall authorize the hospital to receive said person and there to examine him and observe his mental condition for a period not exceeding thirty days."

It would seem that a proceeding to commit an alleged mentally disordered person to a State hospital under the foregoing procedure is a judicial proceeding within the rule of absolute privilege, and we so hold.

On the record here presented it appears that the defendant physician made the affidavit complained of in the due course of a proceeding previously instituted by the plaintiff's husband under the foregoing statutory procedure, and this is so notwithstanding the affidavit was made before

a notary public and does not appear to have been filed with the Clerk of the Superior Court before whom the proceeding was pending. As to this, it is significant to note that while G.S. 122-42 specifically directs that the initial affidavit-application by which a proceeding is commenced must be "Sworn to before the clerk . . . or the deputy clerk of court," nevertheless, the companion statute, G.S. 122-43, expressly provides that the affidavits of the physicians "may be sworn to before a notary public."

Moreover, it is noted that the statute prescribes no formal procedure to be followed by the clerk in transmitting the forms to the examining physicians and in getting them back from the physicians after execution. However, since the statute expressly provides—no doubt for the convenience of the physicians—that the affidavits may be made before notaries, rather than before the clerk, it follows by necessary implication that the statute sanctions the procedure followed in the instant case whereby the document, containing initial affidavit-application of the plaintiff's husband and the defendant's affidavit, was delivered by the defendant to the plaintiff's husband, the intermediary through whom the defendant received the document from the clerk in the first instance.

It thus appears that the facts on the issue of privilege are undisputed and support the single inference that the affidavit made by the defendant is absolutely privileged.

Here, then, the plaintiff's evidence establishes as a matter of law the truth of the defendant's affirmative defense of absolute privilege. This being so, the judgment of nonsuit entered below will be upheld under application of the rule explained and applied by *Barnhill, J.,* now *C. J.,* in *Hedgecock v. Ins. Co.,* 212 N.C. 638, 641, 194 S.E. 86: "When the plaintiff offers evidence sufficient to constitute a *prima facie* case in an action in which the defendant has set up an affirmative defense, and the evidence of the plaintiff establishes the truth of the affirmative defense as a matter of law, a judgment of nonsuit may be entered." See also *Thomas-Yelverton Co. v. Ins. Co.,* 238 N.C. 278, 77 S.E. 2d 692.

Affirmed.

BOBBITT, J., took no part in the consideration or decision of this case.