101   257
s103   500

## INHABITANTS OF ROCKPORT *vs.* INHABITANTS OF SEARSMONT.

### Knox.    Opinion March 19, 1906.

*Insane Hospital. Illegal Commitment. Recommitment. Constitutionality of Section 40 of R. S., c. 144. Expenses of Commitments. Support in Insane Hospital. Paupers. Necessity of Notice to Town of Pauper Settlement. R. S., c. 27. R. S., c. 144, §§ 24, 39, 40.*

An insane person whose pauper settlement was in the defendant town, was committed by the plaintiff town to the Insane Hospital at Augusta for support therein, but this commitment was discovered to be illegal, and thereupon the aforesaid insane person was again committed to said Hospital the second commitment being a legal one in accordance with the provisions of section 39 and 40 of chapter 144 of the Revised Statutes. The plaintiff town then brought an action against the defendant town, under the provisions of section 42 of said chapter, to recover the expenses of both commitments and the sums paid for the support of the insane person in said Hospital. The defendant town contended that said last named section of said chapter is unconstitutional.

*Held* : That this section comes clearly within the authority of the legislature in the exercise of the police powers of the state and is therefore constitutional; that in the exercise of this power the legislature has an undoubted right to divide the state into as many political divisions as it sees fit, whether counties, cities, towns or plantations, and impose upon them the care and support of paupers in any manner it sees fit.

Chapter 144 of the Revised Statutes is silent as to the requirement of any pauper notices, yet the entire scheme of the chapter is based upon the theory that the expenses and support incurred under it are in the nature of pauper supplies, while section 24 of said chapter expressly provides that these expenses shall be recovered "as if incurred for the expense of a pauper." It is therefore *held;* that proceedings under R. S., chapter 144, with respect to expenses and support of a person committed to an Insane Hospital by the town committing and not the pauper residence of such person, come within the purview of R. S., chapter 27, with reference to the notice required by one town to another in case of furnishing pauper supplies.

In the case at bar, the plaintiff town having given notice to the defendant town, under the recommitment, on the 27th day of February, 1905, is entitled to recover for expenses and support, either under the original or the new commitment for only three months prior to giving such notice.

On report.   Action to stand for trial.

Action brought by the plaintiff town to recover the expenses incurred by it in committing to the Insane Hospital at Augusta one Grace E. Farnham, an insane person, whose pauper settlement was alleged to be in the defendant town, and also to recover the sums paid·by the plaintiff town for the support of the said Grace E. Farnham in said Hospital.

The said Grace E. Farnham was twice committed to said Hospital. The first commitment was discovered to be illegal from the fact "that no physician appeared and testified before the municipal officers in regard to the insanity of Grace E. Farnham."   Thereupon the said Grace E. Farnham was again committed to said Hospital in accordance with the provisions of sections 39 and 40 of chapter 144 of the Revised Statutes. ·

By agreement the case was sent to the Law Court on report for its determination, with the stipulation that if the action be maintainable it should stand for trial, otherwise judgment for defendant.

The case is stated in the opinion.

*Arthur S. Littlefield,* for plaintiff.

*R. F. Dunton and Joseph E. Moore,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, POWERS, SPEAR, JJ.

SPEAR, J.   This case comes up on report and involves the collection of expenses incurred by the town committing against the town of pauper settlement for the commitment of Grace E. Farnham to the Insane Hospital at Augusta and for support therein.   It is not in controversy that the town of Rockport undertook to commit Grace E. Farnham to the Hospital and that the town of Searsmont is the. place of her pauper settlement.   Whether the plaintiff town succeeded so as to legally charge the defendant town with the expenses of commitment and support thereafter to the date of the writ, is the first question in issue.   The case shows that Grace E. Farnham was originally committed to the Hospital by a certificate of commitment certified by the selectmen and attested by the town clerk on the

20th day of January, 1904 ; and that a regular pauper notice dated Jan. 25, 1904, and a notice of commitment to the Hospital dated Jan. 28, 1904, specifying an expenditure of $120.43 were respectively sent by the plaintiffs to the defendants, and admitted to have been duly received and denials returned.

But nearly a year after the commitment the superintendent of the Maine Insane Hospital having discovered or suspected an irregularity in the proceedings, thereupon, in accordance with sections 39 and 40, R. S., chapter 144, made application to the municipal judge of the city of Augusta for an inquiry with respect to the legality of said commitment. After due notice and hearing upon this application, on the 14th day of January, 1905, the municipal judge issued his certificate recommiting said Grace E. Farnham to the Hospital. No question is raised as to the legality of the proceedings involved in the recommitment. On the 27th day of February, 1905, the plaintiff town again notified the defendant town of the recommitment of Grace E. Farnham and it is admitted that the notice was received and a denial returned. The defendant town further says in the report that, if competent to be proved, it is admitted " that no physician appeared and testified before the municipal officers, in regard to the insanity of Grace E. Farnham; that Grace E. Farnham at the time of the commitment, and for a longer or shorter period prior thereto, was living in the town of Rockport." The record erroneously states that the physicians did appear as required, before the municipal officers.

In view of the first part of the above admission it requires but little discussion to establish the illegality of the original commitment. It is claimed, however, by the defendant town that the municipal officers, for the purpose of commitment to the Insane Hospital, act in a judicial capacity and that their record is conclusive, citing as authority for their contention, *Eastport* v. *Belfast*, 40 Maine, 265, which holds that their record " cannot be impeached by parol evidence. If it is erroneous as a record it may be reversed. But if the selectmen have jurisdiction of the case it is competent proof of the judgment." The kernel of this citation in its application to the present case is contained in the clause "but if the selectmen have

jurisdiction of a case it is competent proof of the judgment." Want of jurisdiction was the important defect in the proceedings of the municipal officers in this case.

One of the jurisdictional facts authorizing the selectmen of the town to act at all in a case of commitment to the Insane Hospital is the requirement of section 17, chapter 144, that "in all cases of preliminary proceedings for the commitment of any person to the Hospital to establish the fact of the insanity of the person to whom insanity is imputed, the evidence of at least two reputable physicians given by them under oath before the board of examiners shall be required." It would seem from an examination of the statute that compliance with this section is imperative and mandatory, not necessarily as a matter of record but as a matter of fact, independent of the other proceedings required by the statute. A moment's reflection reveals the importance of this evidence and the wisdom of the legislature in requiring it. Above all things else it should be made to positively appear, as a preliminary step to any action whatever on the part of the selectmen, that the person in contemplation of commitment is beyond question insane. To fail to make an adequate investigation in this respect, and thereby commit a person not insane, would be monstrous if not criminal.

A careful comparison of sections 16 and 17, of chapter 144, will we think, clearly substantiate this view that the above requirement is intended to be an independent jurisdictional fact. It will be observed by a careful reading that section 16 prescribes in detail all that is to be done by municipal officers to effect a legal commitment of a person to the Hospital, including the form of certificate upon which the superintendent is to receive and hold such person until restored or discharged by law. Then the last clause of this same section provides that " the municipal officers shall keep a record of their doings and furnish a copy to any interested person requesting and paying for it." What "doings"? Only those specified in section 16. No future doings are, or, as is perfectly apparent, could be referred to. The language of the statute is specific. It leaves no room even for an inference as to a record of subsequent "doings." So that apparently, everything necessary to be done is complete under

section 16. Now then it should be emphatically noticed that this section does not require, and the record therein specified need not contain any reference to the fact that the evidence of at least two reputable physicians was given before the board of examiners.

Therefore the record required by statute is complete without reference to the evidence required by section 17. It consequently follows that the evidence of the physicians required by the latter section, is entirely additional to the requirements of section 16 and need form no part of the record of the things therein specified to be done but must become, if the alleged default of such evidence is put in issue, a matter of proof, dehors the record, as a necessary jurisdictional fact upon which to base any legal proceedings of commitment on the part of the municipal officers. While not necessary that it shall be included in the record required by section 16, yet some record must show that the requirements of section 17 have been complied with ; but such record cannot be made conclusive of the statements therein contained and may be attacked collaterally.

An analysis of the statute without any reference to the decisions seems to warrant the above construction.

But even if the record required by statute contained a false statement as to a jurisdictional fact our opinion would still be the same with respect to the right of the defendants to attack it collaterally.

It is a well settled principle of law that even the judgment of a superior court may be collaterally attacked by any person not a party to it, if fraudulently obtained. In such case the attack does not seek a contradiction but an impeachment of the record. The general rule governing this class of cases is well stated in *Sidensparker* v. *Sidensparker*, 52 Maine, 481, and *Vose* v. *Morton*, 4 Cushing, 27. That the record in the case at bar may be attacked collaterally by showing that it is false with respect to statements therein contained relating to jurisdictional facts, we call attention to the analogous cases of *Holman* v. *Holman*, 80 Maine, 139 ; *Coolidge* v. *Allen*, 82 Maine, 23, and *Winslow* v. *Troy*, 97 Maine, 130.

Our conclusion is that the original commitment was illegal. But as the recommitting was legal we now come to the second proposition raised by the defense, that section 42 of chapter 144, under

which the plaintiffs seek to recover is unconstitutional. This section reads as follows: " When a person has unlawfully been committed to a Hospital and recommitted under the three preceding sections, the person or town liable for the support of such person, had his original commitment been lawful, is liable for the expenses of the examination and commitment under such unlawful commitment, for the support of such person thereunder, for the expenses of the examination and recommitment under the three preceding sections, and for support thereafterward furnished under such recommitment, and such liability shall extend to the town of such person's settlement, and to any person ultimately liable for such patient's commitment and support under a lawful commitment."

The facts show that it was enacted before the commencement of any of the proceedings contained in this case, therefore the claim of the defendants that it is retroactive is more specious than substantial. They reason thus : Suppose there had been no recommitment, then it is clear there would have been no liability at all. The statute then, they say, takes effect at the date of the recommitment, and the legislature accordingly could not revive the account and make it a claim by a direct act of that date. And how could it indirectly ?

This statute simply makes the town of the pauper settlement of the person committed to the Insane Hospital liable for all the expenses of an illegal commitment, including support during the unlawful confinement, and for all the expenses of the recommitment made in accordance with the statute, and for support furnished under such recommitment after the date thereof. The very foundation of this section is the provision for a recommitment.

If there had been no recommitment in this case, even though the statute existed, the plaintiff town would have no standing. But a recommitment having been made, so that the person to whom insanity is imputed is lawfully within the hospital, then the statute takes effect and covers the whole proceeding as one transaction, the recommitment being but a continuation of the proceedings of the original commitment. Without a commitment, legal or illegal, there could be no recommitment. The one is the complement of the other.

While recommitment is the occasion which calls the statute into effect yet the statute when applied affects the remedy and not the rights of the parties. It does not make that a debt which was not a debt before. The defendant town was under every obligation to pay all the expenses under the original commitment, except for the inter-position of a legal objection. This statute comes in and prescribes a remedy by which this objection is overcome and the just rights of the parties established.

We think this section comes clearly within the authority of the legislature in the exercise of the police power of the state.

In the exercise of this power the legislature has an undoubted right to divide the state into as many political divisions as it sees fit, whether counties, cities, towns or plantations, and impose upon them the care and support of paupers in any manner it desires. The exercise of this power of the legislature has been manifested in many instances in this state in the division of towns, and the setting off of a part of a town as an independent municipality or incorporating it with another, wherein it has exercised arbitrary power as to the residence and care of the paupers residing in the towns so divided or parts so incorporated. And this power has never been questioned. It has been conceded that these acts are a portion of the police power that may be exercised by the legislature according to its wisdom and sense of right.

While chapter 144 is silent as to the requirements of any pauper notices, either in the original or the recommitment proceedings, yet we think the entire scheme of the chapter is based upon the theory that the expenses and support incurred under it are in the nature of pauper supplies.

In fact section 24 expressly provides that these expenses shall be recovered " as if incurred for a pauper."

We are therefore inclined to the opinion that the proceedings under R. S., chapter 144, with respect to expenses and support of a person committed to the asylum by the town committing and not the pauper residence of such person, comes within the purview of R. S., chapter 27, with reference to the notice required by one town

to another in case of furnishing pauper supplies.    That is, the plaintiff town in this case having given notice to the defendant town under the recommitment, on the 27th day of February, 1905, is entitled to recover for expenses and support either under the original or the new commitment only three months prior to giving such notice.

In accordance with the stipulation in the report the entry must be,

*Case to stand for trial.*