CECIL DUNBAR
*vs.*
DR. WILLIAM GREENLAW

Somerset.    Opinion, December 15, 1956.

*Jerome G. Daviau,* for plaintiff.

*Locke, Campbell, Reid and Hebert,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY, SULLIVAN, DUBORD, JJ.

SULLIVAN, J.   The defendant excepts to the overruling of his demurrer to the plaintiff's amended declaration in tort.

Defendant is a physician. The plaintiff accuses him of having erroneously certified in ancillary, emergency, insanity, detention proceedings, R. S., Chap. 27, Sec. 105, without sufficient inquiry or examination, that the plaintiff was insane. Plaintiff was detained in a state hospital and claims resultant damage.

The amended declaration contains the following recitation of the standard of care legally required by the plaintiff from the defendant and of the defendant's failure to fulfill it:

"It had then and there become the duty of the defendant

*to exercise reasonable and ordinary care, skill and diligence*

in an examination of the plaintiff to ascertain his true mental condition

*to make a prudent and careful* inquiry and to obtain proof whether he was sane or insane and

it also became the duty of the defendant *to exercise his best and reasonable and proper judgment* to the plaintiff's sanity

- - - - -
the said defendant - - - - - *made a false, pretended and grossly negligent examination* of the plaintiff as to his mental condition

- - - - -
the defendant failed and neglected *to use or to exercise reasonable and ordinary care, skill and diligence* in such examination - - - - and

the defendant failed *to make a prudent and careful inquiry* and to obtain proof as to the sanity or in-

> sanity of the plaintiff, and failed *to exercise his best, reasonable and proper judgment* as to the plaintiff's sanity but
>
> *with gross and culpable negligence* without adequate and proper examination of the plaintiff, the defendant made and delivered said certificate" - - - - (emphasis supplied)

In insanity commitment cases the municipal officers of towns are constituted a judicial tribunal. R. S., Chap. 27, Sec. 104 ff; *Eastport* v. *Belfast,* 40 Me. 262, 265. See, also, *Rockport* v. *Searsmont,* 101 Me. 257, 259; *Reycraft* v. *McDonald,* 194 Mich. 500; *Corcoran* v. *Jerrel,* 185 Iowa, 532; *Fisher* v. *Payne,* 93 Fla. 1085; Cooley on Torts, 4th ed., Chap. 7, Sec. 153, Page 532.

*Eastport* v. *Belfast, supra,* is a decision based upon the provisions of Chap. 33, Sec. 8 of the Acts of Maine of 1847, a statute which is in substance sufficiently congruous with R. S., Chap. 27, Sec. 104 so as not to affect the continuing applicability of *Eastport* v. *Belfast.*

The municipal officers of towns, R. S., Chap. 10, Sec. 22, Subsec. XIX, XXVI, conduct hearings for the emergency restraint or indeterminate commitment of the insane and make decisions and appropriate commitments. R. S., Chap. 27, Sec. 104, 105; *Sleeper, Applt.,* 147 Me. 302, 304, 310, 312.

> - - - - - " (T) hey shall immediately inquire into the condition of any person in said town alleged to be insane; shall appoint a time and place for *a hearing by them* of the allegations of said complaint, - - - - shall *call before them all testimony necessary for a full understanding of the case;* and *if they think* such person insane and that his comfort and safety or that of others interested will thereby be promoted *they shall forthwith send him* to either the Augusta or the Bangor state hospital" - - - - - (emphasis supplied)
>
> R. S., Chap. 27, Sec. 104

"Pending the issue of such certificate of *commitment by the municipal officers,* such superintendent may receive into his hospital any person so alleged on complaint to be insane, provided such person be accompanied by a copy of the complaint and physicians' certificate; which certificate shall set forth that in the judgment of the physicians the condition of said person is such that immediate restraint and detention is (sic) necessary for his comfort and safety or the safety of others; - - - - - Said municipal officers shall keep a record of their doings and furnish a copy to any interested person requesting and paying for it." (emphasis supplied)

R. S., Chap. 27, Sec. 105.

Jurisdiction to summon, inquire, hear, adjudge, detain and, where warranted, commit is the judicial authority conferred upon the municipal officers by the two statutory sections. Necessary to such functions are the right and duty to subject witnesses to examination and to accept or reject evidence. Otherwise to what purpose would it be to empower those officers to "call before them all testimony necessary for a full understanding of the case" or to require decisions from them?

To sustain the municipal officers in an emergency detention, an examination and certificate of insanity by two reputable physicians licensed and practicing in this state and appointed by such municipal officers are a preliminary requisite. R. S., Chap. 27, Sec. 113. The examination and certificate by the physicians are "imperative and mandatory." *Rockport* v. *Searsmont,* 101 Me. 257, 260. But the act of detention in an institution for the insane, if any be made, is performed by the municipal officers. *Pennell* v. *Cummings,* 75 Me. 163, 166; *Sleeper, Applt.,* 147 Me. 302, 310, 312. In the discharge of their judicial duties it may be necessary for the municipal officers to subject the physicians to questioning.

Chap. 27, Sec. 105 read with Sec. 113, demonstrates that the certifying physician is a witness in emergency restraint and detention proceedings as in indeterminate commitment cases and that the municipal officers are the judges. Speaking of emergency detention under the present R. S., Chap. 27, Sec. 105, our court said, in *Sleeper, Applt.*, 147 Me. 302, 310, 312:

> Page 312. - - - - - "It could be taken only in those cases where two physicians certified *to the municipal officers* that immediate restraint and detention was (sic) necessary for the comfort and safety of the person alleged to be insane and for the safety of others."

> Page 310. - - - - - "As we have heretofore shown, the original law" (now R. S., Chap. 27, Sec. 105) "authorized the municipal officers on petition to them, and after notice and hearing to commit in all cases emergent or otherwise. It also provided for temporary commitment in emergency cases pending such hearing. Along with these provisions for commitment by the municipal officers," - - - - -

The rôle and function of the examining and certifying physician in insanity detention and commitment cases are those of a witness. He does not institute the process. That is reserved to a blood relative, husband, or wife of the alleged insane person or to a justice of the peace. R. S., Chap. 27, Sec. 104. The physician is not the judge; the municipal officers are the judges. His relation to the alleged insane person is not, *pro hac vice*, that of physician with patient. He is appointed by the municipal officers. R. S., Chap. 27, Sec. 113. His opinion is of serious public interest. It is of grave import to the individual alleged to be insane. Immediate treatment for the benefit of one mentally ill, danger to him or to others from his enlargement, the exercise of proper police power by the state and the safeguarding of the inviolable, personal rights of an individual are some of the urgent consults. *Sleeper, Applt.*, 147 Me. 302, 315. The

physician is an expert witness. *Mezullo* v. *Maletz,* 331 Mass. 233; *Springer* v. *Steiner,* 91 Ore. 100, 112. He is one of two such required by the statutes. R. S., Chap. 27, Sec. 106, 113. He is entrusted with a learned problem where there is often all too little certitude.

This plaintiff avers that he was sane but that the defendant, as a certifying physician in the ancillary, emergency proceedings held, erroneously certified that the plaintiff was insane and should be immediately confined and that the plaintiff was restrained and detained in a state hospital, to his defamation and personal suffering. The plaintiff seeks to hold the defendant to the standard of due care under the circumstances of the certification and accuses the defendant of gross negligence tantamount to legal malice. *Jellison* v. *Goodwin,* 43 Me. 287, 288; *Toothaker* v. *Conant,* 91 Me. 438, 439. The plaintiff presents his case as a malpractice suit. The nature of the charge would seem to be that of libel, *Perkins* v. *Mitchell,* 31 Barb. (N. Y.) 461, 465; Cooley on Torts, 4th ed., Chap. 7, Sec. 145, Page 494; rather than of false imprisonment, *Pennell* v. *Cummings,* 75 Me. 163, 166; or malicious prosecution, *Fisher* v. *Payne,* 93 Fla. 1085, 1093. The defendant by his demurrer admits all facts well pleaded, *Brown* v. *Rhoades,* 126 Me. 186, 187.

*Pennell* v. *Cummings,* 75 Me. 163, is a case of indeterminate insanity commitment. It is concerned immediately and strictly only with the admissibility of some evidence. It contains dicta which support the theory of this plaintiff in his declaration as to the standard of care and liability with which this defendant is chargeable. However, the dicta contemplate a mere relation of physician with patient and a typical malpractice charge resulting therefrom, without consideration of the certifying physician as a witness and

without recognition of any consequential privilege. At page 168 of the case is the following language:

> - - -. "the law would undoubtedly hold the defendants in such a case to the usual professional liability for due care and skill, and when the serious consequences that may flow from reliance upon such a certificate by the municipal officers, the imprisonment of a sane person in an insane asylum, perhaps for a long time, the standard of care required, and of professional learning and ability to deal with such a subject, would certainly be an exacting one."

In *Barnes* v. *McCrate*, 32 Me. 442, a slander case and one widely cited, this court said, at Page 446:

> "There can be no question that if a witness, taking advantage of his position, and departing from what rightfully pertains to the case, should voluntarily slander one of the parties, he would be liable. "But when called upon, in the progress of a cause, and under the rules of the court, and confining himself to that which rightfully pertains to the case, he is not liable for the testimony he may give. To hold otherwise would tend to intimidate a witness and to deter from a disclosure of the whole truth - - - - This is a doctrine of the highest legal policy."

In *Garing* v. *Fraser*, 76 Me. 37, it is said, at Page 42:

> - - - - - "words spoken in the course of judicial proceedings, though they impute crime to another, and therefore, if spoken elsewhere, would import malice and be actionable in themselves, are not actionable if applicable and pertinent to the subject of inquiry. Barnes vs. McCrate, 32 Maine, 442; Hoar vs. Wood. 3 Met. 193. So in the case at bar, while the law declares that every person shall have a remedy for every wrong, public policy requires that witnesses shall not be restrained by the fear of being vexed by actions at the instance of those who are dissatisfied with their testimony; but if they perjure themselves they may be indicted and punished therefor."

In the instant case the declaration reveals that the certificate of the defendant physician was pertinent to the subject matter.

The absolute privilege of witnesses as defined in *Barnes* v. *McCrate* and *Garing* v. *Fraser, supra,* is supported by the great weight of American authority. *Rice* v. *Coolidge,* 121 Mass. 393, 395; *Laing* v. *Mitten,* 185 Mass. 233, 235; *Cooper* v. *Phipps,* 24 Ore. 357; *Cooley* v. *Galyon,* 109 Tenn. 1; *Hager* v. *Major,* 353 Mo. 1166; and cases cited in 25 Cyc. 381, 12 A. L. R. 1247, 81 A. L. R. 1119, 158 A. L. R. 584, and 22 L. R. A. 836n, Cooley on Torts, 4th ed., Chap 7, Sec. 153, Page 527.

> "A witness is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding and as a part of a judicial proceeding in which he is testifying, *if it has some relaton thereto.*" (emphasis supplied)
>
> Restatement of the Law, Torts, Sec. 588. Kinter vs. Kinter, (Ohio), 87 N. E. 2d 379, Strycker vs. Levell, (Oregon), 190 P. 2d 922; Schmitt vs. Mann, (Ky.), 163 S. W. 2d 281. Mezullo vs. Maletz, 331 Mass., 233.

Physicians in lunacy commitment proceedings have been accorded such privilege from civil liability for their pertinent certificates and testimony. *Dyer* v. *Dyer,* 178 Tenn. 234; *Corcoran* v. *Jerrel* (Iowa), 170 N. W. 776; *Fisher* v. *Payne,* 93 Fla. 1085; *Hager* v. *Major,* 353 Mo. 1166; *Perkins* v. *Mitchell,* 31 Barb. (N. Y.) 461 *(dictum); Linder* v. *Foster,* 209 Minn. 43 (physician regarded as a quasi judicial officer). See *Reycroft* v. *McDonald,* 194 Mich. 500.

There is contrary authority. *Ayers* v. *Russell,* 3 N. Y., Supp. 338; *Williams* v. *LeBar,* 141 Pa. 149, 151 and *Miller* v. *West,* 165 Md. 245 *(dictum),* were decided upon the issue of ordinary or reasonable care of the physician without cognizance of the witness privilege. *Hall* v. *Semple,* 3 F. & F.

Rep. 337, also, but in respect to a physician acting under a lunacy statute very different from the Maine act. *Brandt* v. *Brandt*, 286 Ill., App. 151, 161 *(dictum)* would require good faith of the physician and *Comfort* v. *Young*, 100 Iowa 627, demanded honesty, good faith and probable cause.

Some authorities deny the pertinent witness privilege to a physician in a lunacy complaint procedure if the tribunal lacks jurisdiction. *Beckham* v. *Cline* (Fla.), 10 So. (2nd) 419; *Hager* v. *Major*, 353 Mo. 1166; *Perkins* v. *Mitchell*, 31 Barb. (N. Y.) 461; 158 A. L. R. 592 n.

In *Mezullo* v. *Maletz*, 331 Mass. 233, 236 (1954), 118 N. E. (2nd) 356, 358, upon demurrer, it was held that a physician signing a pertinent certificate in lunacy commitment proceedings is not liable in tort even if he act maliciously or in bad faith.

The court said:

> "But whatever the law may have been formerly on this subject it is now settled that words spoken by a witness in the course of judicial proceedings which are pertinent to the matter in hearing are absolutely privileged, even if uttered maliciously or in bad faith."

The doctrine of the privilege of protection from tort liability to witnesses for pertinent recitals in judicial proceedings is well established. It is stated without condition in *Barnes* v. *McCrate* and *Garing* v. *Fraser, supra.* In the former case it is defined as a "doctrine of the highest legal policy." It is an absolute privilege and thereby different from the qualified privilege in *Hodgkins* v. *Gallagher,* 122 Me. 112 *(dictum); Elms* v. *Crane,* 118 Me. 261; *Sweeney* v. *Higgins,* 117 Me. 415; *Toothaker* v. *Conant,* 91 Me. 438. Cooley on Torts, 4th ed., Chap. 7, Sec. 151. The privilege includes the certifying physician in lunacy proceedings who acts within the scope of the privileged occasion. Non conformity in some of the decided cases seems to obtain be-

cause of a failure to recognize the physician as the witness that he is, because of a reluctance to accept the doctrine of privilege, as above, 33 Am. Jur., Sec. 146, Page 142; American State Reports, Vol. 123, Page 640 et seq., and because of a fear of dire consequences to the individual victim of any carelessness or malice on the part of a physician. Slanderous or libelous words of any witness, physician or not, in a judicial proceeding are prolific of unfortunate results and in the rationale of the rule of privilege above described such a hazard was weighed. *Mezullo* v. *Maletz,* 331 Mass. 233; *Hoar* v. *Wood,* 3 Metc. (Mass.) 193; Restatement of the Law, Torts, Sec. 588, Comment a; Cooley on Torts, 4th ed., Chap. 7, Sec. 151, P. 524. The law, no doubt, deems it prudent to provide against the possibility of a too apprehensive physician depriving a person mentally ill of any speedy care, treatment or protection indicated or failing to protect the public from a serious menace. There is a dearth of psychiatrists available and it falls upon practicing physicians for want of specialists to furnish the certificates in lunacy cases. If there is sufficient sanction for the general doctrine exempting witnesses in judicial proceedings from tort liability for pertinent testimony, the rule is equally cogent for obtaining the objective judgment of physicians in lunacy commitments and detentions.

Against the likelihood of intentionally false certificates there is a strong deterrent in the criminal law. Conspiracy, wilful perjury, intentional, false certifications and deliberate, false reports in lunacy commitment proceedings and the wilful attempt to cause or the causing of the commitment of the same are constituted and made punishable as criminal felonies. R. S., Chap. 27, Sec. 114.

The plaintiff's amended declaration is insufficient in law; the language used does not state a cause of action. *Brown* v. *Rhoades,* 126 Me. 186, 187.

*Exceptions sustained.*
*Case remanded.*