FRED T. HURLEY, JR.
*vs.*
CHARLES E. TOWNE ET AL.

Somerset.   Opinion, November 30, 1959.

G. M. Davis,
*Bird & Bird,* for plaintiff.

*Locke, Campbell, Reid & Hebert,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SULLIVAN, J.   This is an action in false imprisonment. The declaration and specifications thereunder aver that the plaintiff was sane but that his wife addressed to the municipal officers a complaint that he was insane and should therefore be confined in a State Hospital; that the municipal officers upon the written certificate of the defendants who are physicians committed the plaintiff to an insane hospital as an emergency case; that later the municipal officers conducted a hearing and with a certificate of the plaintiff's insanity signed by the defendant doctors made plaintiff's

commitment indeterminate; that the defendants throughout falsely certified without having examined the plaintiff; that the plaintiff was wrongfully detained in the insane hospital, 40 days and seeks damages.

The defendants demurred contending that the declaration and its specifications are insufficient at law in that the defendants as to both the detention and indeterminate commitment proceedings were witnesses whose certificates were pertinent and that the plaintiff's detention was the act of municipal officers who functioned with judicial immunity.

Plaintiff joined in the demurrer which was sustained by the presiding justice. We here entertain the exceptions of the plaintiff to such a ruling.

"- - - By interposing a general demurrer the defendants admit all facts well pleaded, and the only issue is whether in the language used the plaintiff has stated a legal cause of action. - - -"
Brown v. Rhodes (1927), 126 Me. 186, 187.

"- - - A general demurrer admits all facts well pleaded, and challenges their sufficiency in law upon which to maintain the action. And the only issue is whether in the language used the plaintiff has stated a legal cause of action. - - -"

Inman v. Willinski (1949), 144 Me. 116, 118.

See, also, Richards Co. v. Libby (1943), 140 Me. 38, 40.

For the decision of this case we must, therefore, hypothesize that the defendants made no examination of the respondent and falsely certified his insanity.

Plaintiff in his declaration and specifications assigns sections 103, 104, 105, 106, 113 and 114 of chapter 27, Revised Statutes of Maine (1954), legislative acts for the hospitalization of the insane, and alleges that as a result of the conduct of the physician defendants the plaintiff was both

temporarily and indeterminately committed to a State Hospital for the Insane. Such statutes as a background make it obvious that plaintiff described commitments of the kinds provided by R. S. (1954), c. 27, §§ 104 and 105. In respect to each commitment a judicial proceeding by the municipal officers with an order of commitment by them necessarily preceded confinement in the State Hospital.

> "The act of committing the plaintiff to the insane hospital was not the act of the defendants, but of the municipal officers, a tribunal organized for that purpose - - - -"

> *Pennell* v. *Cummings* (1883), 75 Me. 163, 166.

> See also, *Sleeper, Applt.* (1952), 147 Me. 302, 310, 312 as to R. S., c. 27, §§ 104 and 105 (formerly R. S. (1944), c. 23, §§ 105 and 106).

In *Dunbar* v. *Greenlaw* (1956), 152 Me. 270, this court decided upon firm authority that in insanity commitment cases the municipal officers are constituted a judicial tribunal, that the role and function of the examining and certifying physicians in lunacy proceedings are those of a witness and that as such witnesses the certifying physicians enjoy an absolute privilege from tort liability for pertinent recitals.

Although the declaration deemed deficient in *Dunbar* v. *Greenlaw* amongst several averments contained an allegation that the defendant "made a false, pretended and grossly negligent examination," this plaintiff distinguishes the present case in that these defendants did not scruple to make any examination.

Assuming that these defendants falsely certified the plaintiff's insanity without examination of him, the ultimate consequences occasioned or caused to this plaintiff as recited are truly deplorable. Nor does the law scoff or connive at such inhumanity. R. S. (1954), c. 27, § 114 provides a

very stringent criminal penalty which normally is well calculated to supply an adequate deterrent or condign punishment for such an enormity as the plaintiff narrates.

The physician-patient relation between the defendants and plaintiff did not subsist in this case. Defendants were expert, professional witnesses. *Dunbar* v. *Greenlaw, supra.* The defendants made no report to the plaintiff. The falsity and not the insufficiency of their certificates is the ground of this action against the certifying physicians. *Pennell* v. *Cummings,* 75 Me. 163, 167.

The rule of immunity of witnesses for pertinent testimony in our courts is an ulterior doctrine of trenchant public policy. It is an expression and adaptation of the ethical and politic principle of the greater good of the majority.

> "- - - But when called upon, in the progress of a cause, and under the rules of the court, and confining himself to that which rightfully pertains to the case, he is not liable for the testimony he may give. To hold otherwise would tend to intimidate a witness and to deter from a disclosure of the whole truth. He might have no means to prove his statements. He may have been robbed when alone. Should he testify to the fact, in the course of a regular trial of the offender, he would not be liable for his statement. *This is a doctrine of the highest legal policy.*" (Italics supplied.)

*Barnes* v. *McCrate* (1851), 32 Me. 442, 446.

> "- - - So in the case at bar, while the law declares that every person shall have a remedy for every wrong, public policy requires that witnesses shall not be restrained by the fear of being vexed by actions at the instance of those who are dissatisfied with their testimony; but if they perjure themselves they may be indicted and punished therefor."

*Garing* v. *Fraser* (1884), 76 Me. 37, 42.

"Comment:

a    The function of witnesses is of fundamental importance in the administration of justice. The final judgment of the tribunal must be based upon the facts as shown by their testimony, and it is necessary therefore that a full disclosure be not hampered by fear of private suits for defamation. - - - - For abuse of it, he may be subject to criminal prosecution for perjury and to punishment for contempt."

*Restatement of the Law, Torts,* § 588.

The Massachusetts Court has stated the rationale of the rule as follows:

"It is more important that the administration of the law in the manner provided should not be obstructed by the fears of physicians that they may render themselves liable to suit, than it is that the person certified by them to be insane or a dipsomaniac or inebriate should have a right of action in case it turns out that the certificate ought not to have been given. The statute provides a penalty for a physician who conspires with any person unlawfully or improperly to commit to any lunatic hospital or asylum a person who is not insane, but goes no further."

*Niven v. Boland* (1900), 177 Mass. 11, 14.

The Tennessee Court in the case of *Dyer v. Dyer* (1941), 178 Tenn. 234, 156 S. W. (2nd) 445, 446, 447, reviewed an action of false imprisonment against two physicians who were charged with having made affidavits on which the pronouncement of insanity of the plaintiff and her commitment to the hospital for the insane were based. The statements contained in the affidavits were alleged to have been made *"knowingly, maliciously and falsely"* and to have been the proximate cause of the plaintiff's incarceration in the State Hospital for 21 days. The defendant physicians, as here, demurred. The statute involved was essentially akin to the

Maine laws. The proceedings complained of had transpired before the county court. The Law Court said:

> " 'Applying these principles to this case, the question is not whether the words spoken by the defendant were false and malicious, but were they spoken in a judicial proceeding, and were they relevant and pertinent to the subject of inquiry in that proceeding, or responsive to questions propounded to the defendant by counsel while being examined therein as a witness? If they were, they were absolutely privileged, and the plaintiff's action must fail.' "

> "- - - Conceding, as the declaration charges, that error was committed and that plaintiff was thereby wronged, and that the affidavits she complains of were false as she charges, nevertheless, for the reasons above given, supported by authority, no right of recovery of damages exists and the assignment of error must be overruled and the judgment of dismissal affirmed."

In *Mezullo* v. *Maletz* (1954), 331 Mass. 233, 236, the declaration was in tort against a physician who had signed a certificate of insanity. Defendant demurred. The court sustained the demurrer and held:

> "This count (2nd) presents the question whether a physician signing a certificate in a commitment proceeding will be liable in tort if he acts maliciously and in bad faith. In a dictum in the Niven case (Niven v. Boland, supra.) it was intimated that the examining physicians' immunity from liability with respect to their certificate exists 'so long as they act in good faith and without malice.' 177 Mass. 11, 14. In support of this statement the court cited, among others, the case of Hoar v. Wood, 3 Met. 193, in which it was said that defamatory words spoken by a party or counsel in the course of judicial proceedings are not actionable if they are pertinent to the inquiry and 'were spoken bona fide, without actual malice, or intent

to defame the witness.' (page 198). See also Wright v. Lothrop, 149 Mass. 385, 390. But not all of the earlier cases defined the privilege of a witness, party, or counsel with the qualification just mentioned. See, for example, Watson v. Moore, 2 Cush. 133, 138; Rice v. Coolidge, 121 Mass. 393, 395.

"But whatever the law may have been formerly on this subject it is now settled that words spoken by a witness in the course of judicial proceedings which are pertinent to the matter in hearing are absolutely privileged, *even if uttered maliciously or in bad faith.* Laing v. Mitten, 185 Mass. 233, 235. Sheppard v. Bryant, 191 Mass. 591, 592. And this is the prevailing view elsewhere. 12 A. L. R. 1247 et seq. and cases there collected. Prosser on Torts, § 94. Restatement: Torts, § 588. *If a physician signing a certificate is entitled to the privilege of a witness* — and the Niven case so holds — *then it would follow that he does not lose it on proof of malice or bad faith.* We see no sound basis for holding the privilege of such a witness to be absolute so far as defamatory words are concerned but qualified in a case like the present. The reasons for an absolute privilege are quite as strong in the latter situation as in the former. It is important that judges charged with the duty of committing insane persons should have the assistance of medical experts in forming their conclusions. *The privilege is a compromise between competing rights; the right of a person to be free from false statements touching his mental condition, and the right public and private of a thorough investigation when necessary by some tribunal before which the witnesses may speak without fear.* - - - And, as the defendant has argued, the privilege would afford small comfort to the physician if there was a possibility that he would be subjected in every instance to an inquiry as to his motives." (Italics supplied.)

In *Bailey* v. *McGill* (1957), 247 N. C. 286, 100 S. E. (2nd) 860, two physicians were sued for malpractice in the

nature of libel. The plaintiff alleged that he, although sane, had been committed to an insane hospital by the Clerk of the Superior Court upon affidavits of the defendants made by them without examination or, if upon examination, upon one so hasty and superficial as to be totally inadequate and not real or bona fide. The plaintiff related that he had accordingly been confined for 30 days and thereafter discharged as having been sane when committed. The defendants demurred and their demurrer was sustained. The North Carolina statute provided for an examination by two disinterested physicians at the direction of the Court Clerk and their certificates under oath. The clerk was authorized to hold an informal hearing with notice to the respondent, to examine the certificates and any proper witnesses and to order committal where warranted. The court ruled (P. 865) that the authority of the clerk was judicial and said:

P. 866.

"- - - These two physicians did not institute the proceeding, nor did they, or either of them, have anything whatsoever to do with the institution thereof, according to the complainant's allegations. They were directed by the Clerk of the Superior Court to perform an important duty. In discharging it, they were not engaged in the ordinary practice of their profession. Their role and function in examining plaintiff and signing the affidavits in respect to his mental condition are those of witnesses. These examining physicians did not issue the order of commitment and detention; that was done by the Clerk of Cleveland County.

P. 868.

"- - - The pertinent affidavits made in this proceeding by direction of the Clerk by Drs. Kenneth H. McGill and Thomas H. Wright, Jr., were absolutely privileged, even if made maliciously or in bad faith. - - -"

As we have observed, *ante,* the falsity and not the insufficiency of the certificates of the physician defendants is the basis of this action. The plaintiff urges that in the instant case no jurisdiction was had for the commitment of the plaintiff because of the lack of an examination by the defendants. Plaintiff in support cites the authority of *Beckham* v. *Cline* (1942), (Fla.), 10 So. (2nd) 419. However, that Florida precedent in its quite humanly understandable conclusion to grant a remedy to the plaintiff, Beckham, concerned indeterminate commitment proceedings and under the Florida statute the only notice afforded to the person allegedly insane is the summons of the examining committee composed of two physicians and a layman. According to the pleadings no notice was given. No examination was had. Yet the committee reported the insanity of Virginia Beckham to the court which innocently based a decree upon the negligent or malicious report and committed her. The commitment decree was later frontally attacked in court and set aside. The court in the tort action which followed held that Virginia Beckham without notice had been denied due process of law, that the physicians were quasi judicial officers and that reporting insanity without notice to the person to be examined and without an examination was to act without jurisdiction and actionable. The Florida Court evolved its theory of actionability from the Florida statute as to notice and from a conception of the insanity examining committee as a court *sui juris.*

In Maine examining physicians in lunacy proceedings do not supply notice to the person to be examined. No notice is required in emergency detention commitment process. *Sleeper, Applt.,* 147 Me. 302, 312. Notice by the municipal officers is mandatory in indeterminate commitment cases. R. S., c. 27, § 104. The defendants in the instant case were witnesses. The defendants did not comprise or constitute a court. *Dunbar* v. *Greenlaw,* 152 Me. 270, 274. They cer-

tified as to an examination and finding, albeit falsely. They must be assumed to have also testified at the indeterminate commitment proceedings. There is no allegation in the declaration or specifications that there was no such testimony. *Dyer* v. *Dyer,* 178 Tenn. 234, 156 S. W. (2nd) 445, 447; *Niven* v. *Boland,* 177 Mass. 11, 13 (West Publishing Co., cases collected, *Appeal and Error,* Key Number, 909 (1) ). We must likewise infer that the municipal officers gave notice to the plaintiff.

It is true that in Maine under our statutes, R. S. (1954), c. 27, §§ 105, 106 and 113, physicians' examinations and certificates are jurisdictional as is the testimony of the physicians in respect to R. S., c. 27, § 106. *Naples* v. *Raymond* (1881), 72 Me. 213, 217; *Kittery* v. *Dixon* (1902), 96 Me. 368, 371; *Rockport* v. *Searsmont* (1906), 101 Me. 257, 260. The municipal officers were diligent and dutiful in providing for an examination and certificates. And certificates of examination and a purported finding were supplied to the municipal officers by the defendants. The demurrer constrains us to regard the certificates as false. Nonetheless, the municipal officers had jurisdiction of the subject matter of the lunacy proceedings by dint of the Maine statutes cited. *Eastport* v. *Belfast* (1855), 40 Me. 262. The municipal officers had jurisdiction over the person of the resident plaintiff. The certificates of the defendants were legally sufficient and ostensibly veridical in their content and tenor when rendered. There was a hearing and evidence in the latter proceeding. Mockery of the objective truth did not exclude the certificates from the category of certificates but classified them as certificates of a sort, to wit, false certificates. Falsified evidence from the defendant witnesses did not divest the statutory jurisdiction of the municipal officers. To hold otherwise would result in jeopardy to the municipal officers without justification, *Rush* v. *Buckley* (1905), 100 Me. 322, not to mention the possible hazard to

the blameless hospital superintendent. The municipal officers acted within the bounds of their jurisdiction in their two commitments.

The diagnosis of mental illness is not an exact science. It is an insatiable and demanding specialty never very far from the frontier of the unknown and worthy in its regular pursuit of the dedication of the most skilled human talents. Graduate psychiatrists and psychologists are rationed in number and in available presence in our general population. General practitioners are often obliged in lunacy commitment proceedings to supply a deficiency and an indispensable need for the public weal and the protection of the putatively insane. It is a service ungrudgingly given with many of the characteristics of a draft and frequently with the elements of admirable humanitarianism. It has proved to be a service quite dependable in spite of practical professional handicaps. It can become a rarity if the contingency of tort liability is imposed.

Upon the state of the pleadings in this case the nonfeasance and malfeasance predicated of these defendants are excessively blameworthy and we have no purpose of condoning such. Nor has the law. But for the practical and sound judicial considerations reviewed above this action in tort is not maintainable.

*Exceptions overruled.*