MRS. SARAH GETSINGER v. DR. E. F. CORBELL ET ALS.

(Filed 12 November, 1924.)

**Insanity—Commitment—Statutes—Negligence—Evidence—Questions for Jury.**

Omission to perform the material requirements of a statute in application to the clerk of the Superior Court for the commitment of one to the insane asylum, such as the personal examination of the person sought to be committed, etc., is some evidence in her action to recover damages for a wrongful conspiracy against her to deprive her of her liberty, etc., to be considered on the question of the observance by the defendants of a duty required of them; and it constitutes reversible error for the trial judge to instruct the jury that the element of negligence was not to be considered by them in arriving at their verdict upon the issue. C. S., 6191, 6192, 6193.

APPEAL by plaintiff from *Bond, J.,* and a jury, September Term, 1923, of PASQUOTANK.

*C. R. Pugh, P. W. McMullan and Aydlett & Simpson for plaintiff.*
*A. P. Godwin and Ehringhaus & Hall, for defendants.*

CLARKSON, J. This was a civil action brought by plaintiff against Dr. E. F. Corbell, L. M. Rountree and N. A. Getsinger, the latter the husband of the plaintiff.

The defendant, Getsinger, was never served with summons although on the trial below was a witness for the other defendants.

The plaintiff alleges: "That during the year 1920, the defendants above named formed a conspiracy to harass, to damage and to injure the plaintiff, and to have her committed to the State Hospital for the Insane, both of the defendants well knowing that the plaintiff was in good mental condition—that she had her senses and was not a person to be committed to the State Hospital. That pursuant to said conspiracy and in execution of its wrongful purpose and design, the defendants thereupon wrongfully and unlawfully, maliciously and without any cause, made affidavit that the plaintiff was insane and was a fit person to be committed to the State Hospital for the Insane, showing homicide tendencies at times, all of which defendants knew was untrue and all of which further was, as plaintiff is informed, believes and avers, was done by the defendants for the purpose of committing the plaintiff to the State Hospital for the Insane, and for degrading and humiliating her and depriving her permanently of her liberty."

Papers in the usual form to commit persons to the hospital for the insane were obtained from the clerk of the Superior Court of Gates County. N. A. Getsinger, plaintiff's husband, made the affidavit before the clerk that she was insane. The usual questions (38 in number) were answered and signed by all three of the defendants and sworn to before R. W. Simpson a justice of the peace, on 8 October, 1920. The clerk adjudged that plaintiff was a fit subject for a hospital and ordered that she be committed to the State Hospital at Raleigh. The clerk made a further order to the sheriff of Gates County reciting that it was made satisfactorily to appear to him that the plaintiff was insane and a fit subject for a state hospital, etc., and commanding him to deliver the plaintiff to the superintendent of the State Hospital at Raleigh for safe-keeping. The papers are regular on their face. The plaintiff having been informed by a neighbor of what had been done, fled with her six-year old child to Virginia. Shortly after this, she and her husband made an amicable agreement as to the division of certain property he owned and in regard to his withdrawing the proceedings to send her to the State Hospital, and she keeping the child upon certain terms. The papers committing her to the hospital were signed by the clerk on 11 October, 1920, and the agreement with her husband was made 23 November, 1920. The summons in the case was issued 10 December, 1921. The record in the case contains 126 pages and 41 exceptions.

After a careful reading of the entire record and with knowledge that the case took a long time to try and the burden of a new trial, we are constrained to send the case back on a matter we think prejudicial to plaintiff. We will consider the law and this single exception.

Where parties in pursuance of a conspiracy or combination to use legal proceedings fraudulently to injure another, a person who has been injured may bring an action to recover damages sustained. 12 C. J., p. 588, sec. 110 (3); *Davenport v. Lynch,* 51 N. C., p. 545; 5 Am. L. Rep., (Anno.) p. 1097.

The first issue submitted to the jury was as follows: "Did defendants, Dr. E. F. Corbell and L. M. Rountree, or either of them, with intent to injure and annoy the plaintiff, Mrs. Getsinger, fraudulently conspire and agree with her husband to file papers to have her put in the hospital as alleged?"

The jury having been out several hours deliberating, about 11:30 at night, they sent for the judge, and the record made by the court below is as follows: "After court adjourned, the jury sent word to the judge that they wanted to see him. He came to the courthouse and came up to where they were with the sheriff and clerk, and one of the jurors, all being present, stated that they wanted to ask him the following questions. That they wanted to know on the first issue whether negligence on the part of Dr. Corbell or Rountree would have any bearing on the issue. The judge answered the question as follows: 'It is not a question of negligence, it is a question of whether or not they fraudulently conspired or agreed with Mr. Getsinger to file papers with intent to annoy and injure her and have her put in the hospital.'"

After this instruction was given, the jury answered the first issue "No."

Now the question presented by the jury to the court below is presented to us for consideration. "Whether negligence on the part of Dr. Corbell or Rountree would have any bearing on the issue."

C. S., 6191 is as follows: "Whereupon, unless the person in whose care or custody the insane person is will agree to bring him before the clerk without a warrant, or unless the clerk shall be of the opinion that it will be injurious to the insane person to be brought before him, the clerk shall issue a precept, directed to the sheriff or other lawful officer, substantially in the following form:

"State of North Carolina,

To the Sheriff or Other Lawful Officer of . . . . . . . . . . . . . . . . County. Greeting:

Whereas information, on oath, has been laid before me that . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . is insane, you are hereby commanded to bring him before me within the next ten days, that necessary proceedings may be had thereon.

Given under my hand . . . . . . . . day of . . . . . . . A.D., . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Clerk Superior Court."

C. S., 6192, is as follows: "If the alleged insane person be confined in jail otherwise than for crime, the sheriff shall remove him from the jail upon the order from the clerk. Upon the bringing of the alleged insane person before the clerk by his friends, or upon the return of the precept with the body of the insane person, the clerk shall call to his assistance the county physician of the county, or some other licensed and reputable physician, resident of this State, and shall proceed to examine into the condition of mind of the alleged insane person. He shall take testimony of at least one licensed physician, resident of this State, and, if possible, a member of the family, or some friend or person acquainted with the alleged insane person, who has had opportunity to observe him after such insanity is said to have begun."

C. S., 6193, provides that the clerk may discharge person, require bond or commit to hospital. C. S., 6194, provides that the examination may be at home of patient. C. S., 6195, provides when justice of the peace may make examination. C. S., 6196, questions to be answered and certified to superintendent of State Hospital.

It appears in the evidence, undisputed from the record, that the defendants proceeded in having the plaintiff declared insane without subjecting her to an orderly inquisition of lunacy. That is to say, without notice to her of the proceeding instituted for that purpose and without having her present for examination at any stage of such proceeding. In other words, the entire proceeding to put plaintiff in the hospital for the insane was not done by the defendants in strict compliance with the law. The jurors, men of intelligence and moral character, on the first issue having in mind no doubt this. fact, asked the court below "whether negligence on the part of Dr. Corbell or Rountree would have any bearing on the issue." We think it would, and the court ought to have so charged the jury. Negligence is a word well known in its common acceptance. Webster defines it to mean: "The quality or state of being negligent; lack of due care; omission of duty; habitual neglect; heedlessness."

To acquit the defendants on this issue, they must have acted in good faith, not fraudulently.

In law "negligence" is the failure to exercise ordinary care; the failure to exercise which constitutes negligence is that degree of care which a prudent man should use under like circumstances and charged with like duty. Negligence applicable here is definition of *Stacy, J.,* in *Whitt v. Rand,* 187 N. C., 808: "That there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed the plaintiff, under the circumstances in which they were placed."

If the jury had come to the conclusion under the facts and circumstances of the case that the defendants were guilty of negligence, the court should have instructed them that this negligence was some evidence to be considered, with the other evidence in the case, on the issue as to whether defendants acted fraudulently or in good faith. It was not convincing, but a circumstance to be considered with the other evidence in the case. Under the facts of this case, the jury's request, late at night, having been out for some time, we think that the charge as given was prejudicial to plaintiff and constitutes reversible error.

For the reasons given, there must be a

New trial.