MABEL (MRS. FRED W.) HAGER, Appellant, v. HERMAN S. MAJOR, HOME INSURANCE COMPANY, NATIONAL FIRE INSURANCE COMPANY, HANOVER FIRE INSURANCE COMPANY, and ROYAL INSURANCE COMPANY.—No. 39251.—186 S. W. (2d) 564.

Division One, April 2, 1945.

*Clif Langsdale, Josephine Myers* and *Roy W. Rucker* for appellant.

*John W. Hudson* for respondent Herman C. Major.

*Warrick, Koontz & Hazard* for respondent National Fire Insurance Company of Hartford; *Hogsett, Trippe, Depping & Houts* for respondents The Home Insurance Company of New York, The Hanover Fire Insurance Company of New York and Royal Insurance Company, Ltd., of Great Britain.

BRADLEY, C.—Action to recover $50,000 actual and $100,-000 punitive damages for alleged libel. Separate demurrers to the petition were sustained and plaintiff appealed. The following background explanation will be helpful to the reader.

Defendant insurance companies, on September 13, 1941, had pending in the federal district court at Kansas City, a suit against L. H. and Carrie L. Trotter, the purpose of which was to obtain a declaratory judgment that they were not liable for loss under certain fire insurance policies issued to the Trotters. The insurance companies alleged that L. H. Trotter had caused the insured property to be destroyed by fire. The policies issued by the Home and the National were for $3500 each and those issued by the Hanover and the Royal were for $2500 each. The Trotters filed counterclaims against each of the insurance companies, asking judgment on the respective policies. The Trotters also moved to dismiss as to the Hanover and Royal, whose policies were only $2500 each, on the ground that the amount

involved was not sufficient to give jurisdiction of the subject matter in the federal court. The federal district court denied the declaratory judgment, sustained the motion to dismiss as to the Hanover and the Royal, and gave judgment on the Trotters' counterclaim against the Home and the National. The four insurance companies joined in a motion to set aside the order of dismissal for lack of jurisdiction as to the Hanover and the Royal, and for a new trial as to the Home and the National. This motion is hereinafter referred to as the motion for a new trial. For a more complete history of the federal court case, see Home Insurance Company et al. v. Trotter et al. (8th Cir.), 130 Fed. (2d) 800.

The petition in the present case alleges: That plaintiff was subpoenaed, called, sworn, and testified as a witness for the defendants "in a certain cause which was then pending in the United States District Court for the Western Division of the Western District of Missouri . . . wherein the defendants (the four insurance companies) were the plaintiffs and L. H. Trotter and Carrie L. Trotter were the defendants"; that she was examined by counsel for the Trotters and cross examined by counsel for the insurance companies; that she truthfully testified to all the facts within her knowledge.

That the insurance companies wrongfully and unlawfully procured defendant Major to make a false, untrue, malicious and defamatory affidavit (filed in support of the motion for new trial in the federal court case) concerning plaintiff. This affidavit is set out in full in plaintiff's petition and (caption, signature and jurat omitted) is as follows:

"Comes now Herman S. Major, M. D., of lawful age, being duly sworn, upon his oath deposes and says: That he is confidential advisor to the United States District Court in neuro-psychiatry; that he is a member of the United States Public Health Service; that for nine years he was assistant superintendent and clinical director of the State Hospital for the insane at Fulton, Missouri, and served during World War (I) in the medical corps with the rank of captain, where his work was confined exclusively to nervous and mental diseases. That since 1921 he has been medical director of a private sanitarium located at 3100 Euclid Avenue in Kansas City, Missouri, now known as the Major Clinic, which specializes exclusively in the treatment of nervous and mental diseases and liquor and drug addictions; that he has been chief of the nervous and mental service at Kansas City General Hospital since 1921 and is a member of the staff of every hospital in Greater Kansas City, as a neuro-psychiatrist, and is a member of the American Psychiatric Association; that he is recognized and licensed as a specialist in nervous and mental diseases by the American Board of Neurology and Psychiatry.

"That he has read the (transcript) of the testimony of Mrs. Fred W. Hager in the above entitled cause (the federal court case) and has read the affidavits of Reverend J. W. McDonald, the executive

secretary of the Council of Churches in Kansas City, E. R. Cochran, handwriting expert and examiner of questionable documents, G. Whit Pfeiffer, Joseph Barrett, chief clerk of Kansas City Division Headquarters P. O. Inspectors, secretary of the Council of Social Agencies of Kansas City, and Glen D. Reubart, member of the Police Department of Kansas City, filed in support of the motion for a re-hearing and new trial in the above entitled cause, and that he has talked with Rev. J. W. McDonald concerning one Mrs. Fred W. Hager. And as a specialist in nervous and mental diseases for a period of twenty-eight years, he is of the opinion that the said Mrs. Fred W. Hager is a case of psychopathic personality (pathological liar), whose judgment and statements should be considered absolutely unreliable and undependable. From the affidavits it is clearly seen that she is emotionally unstable, has a vivid imagination and is what might be called a typical fanatic and a person who is constantly trying to put herself in the limelight, and he is of the opinion that no court would be justified in accepting her testimony in any cause because of her mental condition.''

That in the motion for a new trial the insurance companies alleged that the verdict (finding in the federal court case) was secured by false and perjured evidence offered by the Trotters in that they called as their witness the plaintiff who testified as follows (our narration): ''I was chairman for two years of the poppy drive for the Veterans of Foreign Wars; I have been on the social service of the Council of Churches; civic chairman of the Government Study Club; delegate from the Women's Trade Union League to the Council of Clubs and registered all of the needy families under Mayor Beach at Christmas for the social agencies. I am still on the Council of Churches in Kansas City, Missouri, and have been on that council about 18 years. I would like to qualify that statement by saying that I serve on the social service committee under Mrs. T. P. Stafford, who is chairman of the social service of the Council of Churches.''

That the motion for new trial in the federal court case alleged that the above evidence of plaintiff was wholly false; that she (plaintiff) was never a member of the Council of Churches of Kansas City, Missouri; ''that she does not at the present time have any active connection with any committee of said council, social or otherwise, and that she was eliminated from activity on said social service committee five years before she so testified because she was determined by said council to be unreliable, untrustworthy, and unfit to serve on said social service committee, or any other committee of said Council of Churches. That the said Mrs. (Fred W.) Hager has not been associated with any charitable organization of repute in Kansas City for a period of at least five years, and that she was also eliminated from all association with the reputable social agencies because she was found to be untrustworthy, unreliable, given to false statements

and exaggeration, and wholly unfit to serve on said agencies in any capacity."

That plaintiff wilfully and falsely testified in response to further questions of counsel for the Trotters in the federal court case as follows (our narration):

"I saw him (Gibson, a witness for the insurance companies in the federal suit and who testified that Mr. Trotter hired him to set fire to the insured building) three times. It is pretty hard for me to give the date, but to the best of my knowledge it was in the month of May (1941); in the latter part of May. The first two times I saw him were about 2 or 3 days apart and the last time probably about 4 or 5 days (later). He engaged me in conversation the last time. The first two times we didn't talk any. He said, 'Mrs. Myers (attorney for the Trotters in the federal suit) is pretty hard to get hold of; she isn't in her office very much.' Q. Did he say to you that he wanted to see Mrs. Myers to tell her that the story he had told about Dr. Trotter hiring him to set his (Trotter's) building on fire was untrue? A. Yes. He said he wanted to retract his statement. He told me the statement was untrue. He didn't say the insurance companies had offered to pay him money. He said, 'They agreed to pay me', but he said, 'All I have out of it is that Conn Withers took me out of jail and put me in a cheap hotel and bought me a suit of clothes, but what I want is money on the cuff.'"

It is stated in the petition that the motion for new trial charges that the last above evidence of plaintiff was wholly false and untrue; that plaintiff "did not at any time have such conversation with Kenneth G. Gibson in the office of the defendants' (Trotters') counsel, Mrs. Josephine Myers."

It is alleged in plaintiff's petition that the insurance companies, in the motion for a new trial, alleged that "Mrs. Fred W. Hager is a professional busybody, notoriety seeker, with a penchant for litigation; that she poses as a social worker in such cases, when, in reality, she represents no one but herself; that she has worked as lay counsel or investigator for defendants' counsel, Mrs. Josephine Myers, in other cases; that in order to gain notoriety she wrote and mailed certain threatening letters to herself; and that later she presented the letters to the Attorney General of the State of Kansas and was referred by the Attorney General to the postal inspector at Kansas City; that she was referred by the postal inspector to one E. R. Cochran, an expert on handwriting, and the said Cochran's investigation revealed to him as an expert that the letters were written by the said Mrs. Hager, and thereupon, the officials to whom she had complained, pursued the matter no further. That later, in order to gain notoriety, she reported to the postal inspector at Kansas City that she was being annoyed by someone rapping on her house; that she was referred by the postal inspector to the Sheriff of Johnson County, Kansas, as her

property was located in said county, and an investigation of this claim also proved it to be unfounded. That the said Mrs. Fred W. Hager is considered by persons acquainted with her to be unreliable and emotionally unstable.''

Defendants filed separate demurrers to the petition. Each demurrer was on the ground that the petition failed to state facts sufficient to constitute a cause of action. Defendant insurance companies have filed joint brief; defendant Major filed separate brief. Defendants contend that all the matter complained of was absolutely privileged. This, the plaintiff denies, but says defendant Major cannot, in any event, claim absolute privilege because he was not a party to the federal court case, and plaintiff says that the Hanover and Royal cannot, in any event, claim absolute privilege because the federal district court was without jurisdiction of the subject matter as to these companies.

Jones v. Brownlee, 161 Mo. 258, 61 S. W. 795, 53 L. R. A. 445, was an action for libel. Mrs. Brownlee's husband brought suit for divorce. In her answer and crossbill she alleged that her husband was ''guilty of consorting and cohabiting with other women, including Mrs. Ella Jones'', plaintiff in the libel suit. The libel petition alleged that the charge in the answer and crossbill was wanton, malicious and known to be without evidentiary support, and was later withdrawn. It was held that the charge was made in the due course of legal proceedings, and in a court of competent jurisdiction, and was relevant to the issues, and was, for such reasons, absolutely privileged. See also, Laun v. Union Electric Company of Missouri et al., 350 Mo. 572, 166 S. W. (2d) 1065, 144 A. L. R. 622; McCormick v. Ford Mfg. Co. (Mo. Sup.), 232 S. W. 1010. We are quite clear that the trial court was correct in sustaining the demurrers as to the Home and National.

Was it error to sustain the demurrers of the Hanover and the Royal? Two questions are presented. (1) Assuming that the federal district court did not have jurisdiction of the subject matter as to these companies, can they, nevertheless, invoke the rule of absolute privilege? and (2) Does the libel petition allege that the federal district court did not have such jurisdiction?

We rule these questions in the order stated. In the Jones case, supra, the court, in dealing with the subject of absolute privilege in a pleading, but not specifically with the question of jurisdiction of the subject matter, said [161 Mo. l. c. 265] that a pleading (to be accorded absolute privilege) ''*must be in a court having jurisdiction of the subject* matter and the defamatory words must be pertinent or relevant to the matter in hand, or, as sometimes said, must not be irrelevant to the subject matter of the action or suit before the court'' (italics ours).

In the Laun case, supra, in dealing with the subject of absolute privilege the court said [166 S. W. (2d) l. c. 1069] : ''In this connec-

tion it cannot be denied but that the general rule is as the defendants contend that defamatory matter contained in pleadings filed according to law in a court *having jurisdiction*, if relevant and pertinent to the case, is absolutely privileged, and it is immaterial that the allegations are false and maliciously made" (italics ours). In support, the court cited McCormick v. Ford Mfg. Co. (Mo. Sup.), 232 S. W. 1010; Maginn v. Schmick, 127 Mo. App. 411, 105 S. W. 666; Townsend, Slander & Libel, Sec. 221, p. 332 and the annotations in 134 A. L. R. 483; 42 A. L. R. 878; 16 A. L. R. 746; 13 L. R. A. (N. S.) 820; 22 L. R. A. 649; 12 Ann. Cas., p. 1025, Ann. Cas. 1913D, p. 444.

In 36 C. J., p. 1252, Sec. 228, it is said: "Although there is authority favoring a contrary or opposite rule, it is generally held that it is necessary that the court have jurisdiction of the subject matter in issue, in order to give to the communication the protection of privilege."

We rule that if the federal district court did not have jurisdiction of the subject matter as to the Hanover and the Royal, then these companies cannot in the libel suit invoke the rule of absolute privilege.

Does the libel petition allege that the federal district court did not have jurisdiction of the subject matter as to the Hanover and the Royal? Plaintiff contends that since the policies of these companies were for only $2500 each, the federal district court did not have jurisdiction of the subject matter of the alleged cause of action for a declaratory judgment of nonliability as to these policies, nor of the counterclaims of the Trotters to recover on them and that, absent such jurisdiction, the Hanover and the Royal cannot invoke the rule of absolute privilege. The Hanover and the Royal, however, contend that there are no facts alleged in plaintiff's petition from which it may be reasonably inferred that the court did not have such jurisdiction. Also, the Hanover and the Royal say that the federal court of appeals [130 Fed. (2d) 800] held that such jurisdiction did exist. Such was not the holding, however. What was said on that question was prefaced with an *if*, that is, if the federal case had been in equity, which was not the case. In ruling a general demurrer to a petition, all facts well pleaded must be taken as true, as well as all inferences which may be fairly and reasonably drawn from the allegations. Lawson v. Higgins et al., 350 Mo. 1066, 169 S. W. (2d) 881; Springer v. Security National Bank Savings & Trust Co. et al. (Mo. Sup.), 175 S. W. (2d) 797.

In addition to what appears, supra, as to the petition, we might say that it specifically refers to the "joint and separate motion to set aside the order *dismissing said cause*", and alleges that the Major affidavit was filed in support of the motion "to set aside the order *dismissing said cause*." The joint motion, which we term the motion for a new trial is set out in full in the petition and is called "a motion *to set aside order of dismissal* as to the . . . Hanover Fire Insurance Company and Royal Insurance Company", and said motion

opens: ''Come now (the four insurance companies) and file their motion *to set aside the order of dismissal* as to . . . the Hanover Fire Insurance Company and Royal Insurance Company'' (all italics ours).

As appears, the petition speaks about the dismissal as to the Hanover and Royal, but does not specifically say *why* such dismissal was made. The record shows that the demurrers were ruled June 22, 1944. Home Ins. Co. et al. v. Trotter et al., supra, was decided September 4, 1942. It is likely that, in the trial court, there was no point on *why* the dismissal was made as to the Hanover and Royal. The *reason* was in the reported case and before the very eyes of court and counsel.

In the situation, and so far as concerns the point that the petition does not specifically allege *why* dismissal was made as to the Hanover and the Royal, the judgment sustaining the demurrers as to these defendants should be reversed and the cause remanded with leave to plaintiff to amend if desired. See Colvin v. Gideon & N. I. R. Co. (Mo. App.), 200 S. W. 715; O'Toole v. Lowenstein, 177 Mo. App. 665, 160 S. W. 1018; Lee v. St. Louis Pub. Serv. Co., 337 Mo. 169, 88 S. W. (2d) 337. Such would be in the interest of justice. Gardner et al. v. Switzer et al., 353 Mo. 1124, 186 S. W. (2d) 561; Hetzler v. Millard et al., 348 Mo. 198, 153 S. W. (2d) 355; Jensen v. ▮▮▮ Wilson Township, 346 Mo. 1199, 145 S. W. (2d) 372.

▮ Can defendant Major invoke the rule of absolute privilege? As appears, supra, plaintiff contends that defendant Major cannot invoke the rule of absolute privilege because he was not a party to the federal court case.

''Motions or affidavits filed in a civil case before a court having jurisdiction in the premises are absolutely privileged if the matter contained therein is relevant and pertinent to the issue.'' 36 C. J., p. 1254, Sec. 231. Or, as stated in Cooley on Torts (4th Ed.), Sec. 156: ''The general rule may be stated to be that pertinent matter in pleadings, motions, affidavits, and other papers in any judicial proceeding, is absolutely privileged, though false and malicious, but that matter which is clearly impertinent and irrelevant and also false and malicious, is actionable.'' See also, Restatement of the Law of Torts, p. 233, Sec. 588, and Hyde v. McCabe, 100 Mo. 412, 13 S. W. 875. The issue in the motion for a new trial in the federal court case, so far as concerned the affidavit of defendant Major, was the alleged false swearing of Mrs. Hager, plaintiff here, and it will be conceded that the affidavit is relevant and pertinent to that issue.

There does not seem to be any case in our own jurisdiction ruling a question just like the one we have here. Schmitt v. Irvin Mann, 291 Ky. 80, 163 S. W. (2d) 281, was in libel and based on an affidavit of the defendant filed by Dorothy L. Mann along with her petition to set aside, on the ground of fraud, a judgment against her in a damage suit. Schmitt, plaintiff in the libel suit, was the attorney for

the plaintiff in the damage suit. In the affidavit, Irvin Mann set out a statement purportedly made to him by Schmitt just after the verdict in the damage suit which, if true, indicated that Schmitt was guilty of subordination of perjury in the damage suit. It was held that the libelous matter in the affidavit was absolutely privileged. The court said [163 S. W. (2d) l. c. 283]: "If he (Irvin Mann) had testified to the same matter upon the trial of the action for a new trial, his testimony would have been privileged, and the same rule should apply to an affidavit filed with the petition."

The ruling in Donnell v. Linforth et al., 11 Cal. App. (2d) 25, 52 Pac. (2d) 937, is to the same effect as in the Schmitt case, supra. See also, Annotation, 12 A. L. R., p. 1247.

To support the contention that the rule of absolute privilege cannot be invoked by defendant Major, plaintiff relies principally upon the Laun case, supra. In that case it appears that the Union Electric Company of Illinois and the Mississippi River Power Company brought suit in the federal district court against Laun and others, and alleged that they (Laun and others) had wrongfully appropriated to themselves money belonging to the Union Electric Company of Illinois and the Mississippi River Power Company, and sought judgment against Laun and others for such money. It seems that the defendants in the libel suit (Union Electric Company of Missouri and the North American Company) had furnished to the plaintiffs in the federal suit the information upon which the suit was based. Laun, plaintiff in the libel suit, proceeded on the theory that even though the plaintiffs in the federal suit were protected under the rule of absolute privilege, such rule did not extend to the defendants in the libel suit who furnished the information upon which the suit was based. The defendants in the libel suit contended that the absolute privilege rule extended to them because they owned the plaintiffs in the federal court suit. Such contention was denied.

So it appears that the claim of absolute privilege denied in the Laun case was on a ground different to the ground upon which defendant Major bases his claim of absolute privilege. The trial court, we think, was correct in sustaining the demurrer as to defendant Major.

That part of the judgment sustaining the demurrers as to defendants Home Insurance Company, the National Fire Insurance Company and Major should be affirmed, but that part of the judgment sustaining the demurrers as to defendants Hanover Fire Insurance Company and Royal Insurance Company should be reversed and the cause remanded as to these defendants with leave to plaintiff to amend to specifically charge lack of jurisdiction as ruled, supra. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.