WILLIAM J. BAILEY v. DR. JOHN C. McGILL, DR. KENNETH H. Mc-GILL, DR. THOMAS H. WRIGHT, Jr.

(Filed 11 December, 1957)

**1. Pleadings § 19c—**

A demurrer admits the truth of the facts properly alleged in the complaint and relevant inferences of fact deducible therefrom, but it does not admit legal inferences or conclusions.

**2. Same—**

Upon demurrer the complaint must be liberally construed with a view to substantial justice between the parties, and every reasonable intendment is to be made in favor of the pleader. G.S. 1-151.

**3. Insane Persons § 1—**

The hearing by the clerk under G.S. 122-46 after certification by two physicians that the person in question should be committed to a State Hospital for observation and admission, G.S. 122-43, is a judicial proceeding and the clerk has the right and duty to subject witnesses to examination and to accept or reject evidence, and, if the person in question is detained and committed, it is perforce by order of the clerk.

**4. Physicians and Surgeons § 14—**

The making of affidavits by physicians at the direction of the clerk in the due course of a proceeding for the admission of a person to a State Hospital is not done by them in the ordinary practice of their profession but in the roll of witnesses.

**5. Malicious Prosecution § 1a: Process § 15: False Imprisonment § 1—**

Allegations that physicians, in making affidavits pursuant to G.S. 122-43 at the direction of the clerk in lunacy proceedings, were guilty of gross negligence amounting to legal malice, without allegations that they were motivated by an ulterior or wrongful purpose or conspired with another in his ulterior and wrongful purpose, fail to state a case for malicious prosecution, or for false imprisonment, or for abuse of process.

**6. Libel and Slander § 7c—**

Physicians, in making affidavits pursuant to G.S. 122-43 at the direction of the clerk, act in the roll of witnesses, and such affidavits are absolutely privileged when pertinent to the proceeding.

**7. Appeal and Error § 7: Pleadings § 19c—**

Where the complaint constitutes a statement of a defective cause of

BAILEY *v.* MCGILL.

action as against certain of the parties, the demurrer *ore tenus* of such parties in the Supreme Court will be allowed and the cause dismissed as to them.

**8. Pleadings § 19c—**

A demurrer for failure of the complaint to state a cause of action cannot be sustained if the complaint is sufficient for this purpose in any respect or to any extent.

**9. Process § 15—Complaint held to state cause of action for abuse of process in instigating lunacy proceedings maliciously for wrongful purpose.**

Allegations to the effect that the relationship of physician and patient existed between defendant and plaintiff, that defendant by virtue of his position persuaded and caused plaintiff's parents to execute and file affidavit with the clerk stating that plaintiff was suffering from some mental disorder, that defendant influenced and caused two other physicians to make and execute the affidavit required by G.S. 122-43 for the commitment of plaintiff, that plaintiff was committed to a State Hospital for thirty days and then discharged because he was not and had never been insane, together with allegations that defendant in advising and influencing plaintiff's parents acted through ill will and malice because defendant knew plaintiff was suffering from an incurable disease and wished to rid himself of plaintiff as a patient, *are held* sufficient to state a cause of action for abuse of process.

**10. Attorney and Client § 3: Trial § 5½—**

Where plaintiff's complaint is sufficient to state a particular cause of action only, a statement of plaintiff's counsel that they did not rely upon such cause of action is not binding upon plaintiff in the absence of express authority to the attorney, since ordinarily an attorney has no power by stipulation or agreement to waive or surrender a substantial legal right of his client.

JOHNSON, J., concurs in result.

APPEAL by plaintiff from *Rudisill, J.,* March-April Civil Term 1957 of CLEVELAND.

Civil action heard on a demurrer *ore tenus.* The demurrer was sustained, and plaintiff appealed.

*Parker Whedon, Kenneth R. Downs and Hugh A. Wells for Plaintiff, Appellant.*
*Falls & Falls and Kennedy, Mahoney & Mull for Dr. John C. McGill, Defendant, Appellee.*
*Carpenter & Webb for Dr. Kenneth H. McGill, Defendant, Appellee.*
*Robinson, Jones & Hewson for Dr. Thomas H. Wright, Jr., Defendant, Appellee.*

PARKER, J. As the defendants' demurrer *ore tenus* challenges plaintiff's complaint on the ground that it does not state facts sufficient to constitute a cause of action, it is necessary to summarize its essential allegations, which are as follows:

Plaintiff is a citizen and resident of Cleveland County, North Carolina. Dr. John C. McGill and Dr. Kenneth H. McGill are, and were at the times complained of, practicing physicians in Kings Mountain, North Carolina. Dr. Thomas H. Wright, Jr. is, and was at the times complained of, a practicing psychiatrist in Charlotte, North Carolina.

Prior to 15 October 1954, plaintiff, as a patient of Dr. John C. McGill, had been confined in a hospital in Kings Mountain. While there Dr. John C. McGill administered, or instructed others to administer, to plaintiff large doses of a pain-killing drug, the direct effect of which was to keep him in an unconscious condition for long periods of time.

Before 15 October 1954 Dr. John C. McGill had various conversations and conferences with plaintiff's parents, and, by virtue of his position as a physician, through these conversations and conferences, influenced, persuaded and caused plaintiff's parents to execute and file an affidavit with the Clerk of the Superior Court of Cleveland County, North Carolina, stating in substance that their son was suffering from some purported mental disorder, and was in need of observation and admission to the State Hospital for the Insane. The parents of plaintiff in executing this affidavit acted not only by reason of the influence of Dr. John C. McGill, but also in complete reliance on his representation to them that their son was insane. Dr. John C. McGill, in advising and influencing plaintiff's parents to execute and file this affidavit, acted solely through ill will and malice toward plaintiff growing out of his anxiety to rid himself of plaintiff as a patient, because he knew plaintiff was suffering from an incurable case of hemophilia, and did not respond to his treatment.

At the request, advice and recommendation of Dr. John C. McGill, the Clerk of the Superior Court of Cleveland County, North Carolina, pursuant to G. S. 122-43, directed Doctors Kenneth H. McGill and Thomas H. Wright, Jr. to make an examination of plaintiff's mental condition.

Dr. John C. McGill, acting through ill will and malice toward the plaintiff, and using his influence as a brother physician, influenced and caused Dr. Kenneth H. McGill, his brother, and Dr. Thomas H. Wright, Jr., to make and execute the necessary affidavit required by statute for committing plaintiff to the State Hospital for the Insane, without making the examination required by G.S. 122-43. Or, if any examination was made by either Dr. Kenneth H. McGill or Dr. Thomas H. Wright, Jr., it was by reason of the influence of Dr. John C. McGill, such a hasty and superficial examination as to be totally inadequate, and not a real or *bona fide* examination as required by G.S. 122-43.

Subsequent to the order or direction of the Clerk of the Superior Court of Cleveland County, Dr. Kenneth H. McGill wholly neglected and failed to make any mental examination of plaintiff, as required by the Clerk's order and the laws of the State, but simply signed and executed the affidavit. Or, if he made any mental examination of plaintiff at any time, it was so superficial, hurried and improper as to be totally inadequate, and not a real or *bona fide* examination as required by G.S. 122-43.

On or about 15 October 1954 plaintiff was carried by ambulance to Charlotte Memorial Hospital for examination by Dr. Thomas H. Wright, Jr., pursuant to the order of the aforesaid Clerk. Upon arrival plaintiff was carried on a stretcher into a hallway of the hospital near the emergency room. Dr. Wright appeared, and, knowing plaintiff was in a drugged and semi-conscious condition, made an examination of him, which was so superficial, hasty and improper as to be totally inadequate, and not a real or *bona fide* examination, as required by G.S. 122-43. The examination consisted entirely of asking plaintiff in his drugged condition a few simple questions, and lasted about five minutes.

Plaintiff was then carried back to Kings Mountain, and for the following two or three days was, under the direction of Dr. John C. McGill, kept in a drugged condition in a hospital there.

About 18 October 1954 plaintiff was carried to Morganton, North Carolina, and there admitted to the State Hospital for the Insane. Plaintiff was not insane, or in need of mental treatment or observation, and has never been in his life in such condition. He was not laboring under hallucinations at any time, nor was he in such condition as to require confinement or restraint to prevent self-injury or violence to others. About 17 November 1954 he was discharged from this hospital, as being a person who was not insane, or in need of mental treatment at the time of his commitment.

Solely by reason of the wrongful conduct of the defendants, plaintiff was wrongfully committed to the State Hospital for the Insane, where he was forced to stay for 30 days or more.

Because of the wrongful conduct of the defendants, and his wrongful commitment to the State Hospital for the Insane, plaintiff has been wronged and damaged by defendants, in that he has been falsely imprisoned for 30 days, suffered the scorn and ridicule of his neighbors and other people in the community where he resides, to whom he has become known as a mental case, and has endured extreme mental anguish and suffering and loss of earnings.

Wherefore, plaintiff prays that he recover $100,000.00 compensatory damages jointly and severally from all the defend-

10—247

ants, and $50,000.00 punitive damages from Dr. John C. McGill.

This case came on for trial. After the jury was duly selected, sworn and impaneled, and the pleadings read, the court requested plaintiff's attorneys to prepare the issues which they contended arose upon the pleadings. Plaintiff, through his counsel, tendered eleven issues. Upon a discussion of the tendered issues, plaintiff's counsel stated in open court that they did not rely upon a cause of action for malicious prosecution, or for abuse of process, or false imprisonment. Whereupon, the defendants, and each of them, demurred *ore tenus* to the complaint on the ground that, aside from a cause of action for malicious prosecution, no cause of action is stated in the complaint. The demurrer *ore tenus* was sustained, and judgment was entered to that effect. The above statement appears in the case on appeal, and also in plaintiff's brief.

Plaintiff says in his brief that he "has stated a cause of action for a false certificate of insanity made by two of the defendants, and conspired in by the other, and the plaintiff has also stated a cause of action upon a certificate of insanity negligently made without proper and ordinary care and prudence, and without due examination and inquiry and proof." Plaintiff also says in his brief that "a physician is liable for a certificate of insanity which is false, or a certificate of insanity that was negligently made by said physician without proper and ordinary care and prudence, and without due examination, inquiry and proof of the facts whether plaintiff was sane or insane."

On a demurrer to the complaint, we take the case as made by the complaint. It is familiar learning that the office of a demurrer is to test the sufficiency of a pleading, admitting for the purpose, the truth of factual averments well stated and such relevant inferences as may be deduced therefrom, but it does not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440. It is also common knowledge to the bench and bar that the court is required on a demurrer to construe the complaint liberally with a view to substantial justice between the parties, and every reasonable intendment is to be made in favor of the pleader. G.S. 1-151; *Barber v. Wooten,* 234 N.C. 107, 66 S.E. 2d 690; *Cathey v. Construction Co.,* 218 N.C. 525, 11 S.E. 2d 571; *Joyner v. Woodard,* 201 N.C. 315, 160 S.E. 288.

G.S. 122-43 reads as follows:

"When an affidavit and request for examination of an alleged mentally disordered person has been made, or when the clerk of the superior court has other valid knowledge of the facts of the case to cause an examination to be made, he shall direct two physicians duly licensed to practice medicine by the State and not holding any office or appointment except advisory or consultative in the hospital to which

commitment may be made, to examine the alleged mentally disordered person or shall have him brought to them in order to determine if a state of mental disorder exists and if it warrants commitment to one of the State hospitals or insitutions for the mentally disordered. If the said physicians are satisfied that the alleged mentally disordered person should be committed for observation and admission into a hospital for the mentally disordered, they shall sign an affidavit to that effect on a form approved by the North Carolina Hospitals Board of Control."

G.S. 122-46 provides:

"When the two physicians shall have certified that the alleged mentally disordered person is in need of observation and admission in a hospital for the mentally disordered, the clerk shall hold an informal hearing. The clerk shall cause to be served on the alleged mentally disordered person a notice of the hearing. The clerk shall have the hearing without unnecessary delay and shall examine the certificates or affidavits of the physicians and any proper witnesses, and at its conclusion may issue an order of commitment on the form approved by the North Carolina Hospitals Board of Control, which shall authorize the hospital to receive said person and there to examine him and observe his mental condition for a period not exceeding thirty days."

The amendment of G.S. 122-46 by the General Assembly at the Session of 1957, Ch. 1232, which Act was ratified on 10 June 1957, changing thirty days to sixty days, has no application here.

Jurisdiction to direct two physicians to examine an alleged mentally disordered person to determine if a state of mental disorder exists, and, when the two physicians shall have certified that the alleged mentally disordered person is in need of observation and admission in a hospital for the mentally disordered, to have a hearing and examine the certificates or affidavits of the physicians and any proper witnesses, and, where warranted, to commit the alleged mentally disordered person to a State Hospital for the Mentally Disordered is the judicial authority conferred upon the Clerk of the Superior Court by the two statutory sections quoted above. Necessary to the performance of such judicial authority is the right and duty to subject witnesses to examination, and to accept or reject evidence. Otherwise, to what purpose would it be to empower the Clerk of the Superior Court to have a hearing, to "examine the certificates or affidavits of the physicians and any proper witnesses," and to require a decision from the Clerk?

The examination and affidavits by the two physicians to commit an alleged mentally disordered person to a State Hospital for the Mentally Disordered for examination and observation

for a period not exceeding thirty days are required by G.S. 122-43 and G.S. 122-46. But the act of commitment and detention of such person in such a hospital, if any be made, is performed by the Clerk of the Superior Court. See *Dunbar v. Greenlaw,* (17 Dec. 1956), 152 Me. 270, 128 A. 2d 218; *Pennell v. Cummings,* 75 Me. 163, 166; *Appeal of Sleeper,* 147 Me. 302, 310, 312, 87 A. 2d 115.

G.S. 122-43 read with G.S. 122-46 demonstrates that the two physicians are witnesses in the proceeding for the detention and commitment of an alleged mentally disordered person in a State Hospital for the Mentally Disordered for observation and treatment for a period not exceeding thirty days, and that the Clerk of the Superior Court is the judge.

According to the allegations of the complaint Drs. Kenneth H. McGill and Thomas H. Wright, Jr. made the affidavits in the due course of a proceeding for the admission of plaintiff to a State Hospital for the Mentally Disordered for examination and observation of his mental condition for a period not exceeding thirty days, by direction of the Clerk of the Superior Court of Cleveland County, who was acting pursuant to G.S. 122-43 and G.S. 122-46. These two physicians did not institute the proceeding, nor did they, or either of them, have anything whatsoever to do with the institution thereof, according to the complaint's allegations. They were directed by the Clerk of the Superior Court to perform an important duty. In discharging it, they were not engaged in the ordinary practice of their profession. Their role and function in examining plaintiff and signing the affidavits in respect to his mental condition are those of witnesses. These examining physicians did not issue the order of commitment and detention: that was done by the Clerk of the Superior Court of Cleveland County.

Plaintiff seeks to hold Drs. Kenneth H. McGill and Thomas H. Wright, Jr. to the standard of due care under the circumstances in the examination and making of their affidavits, and accuses them of gross negligence amounting to legal malice. Plaintiff, through his counsel, stated in open court in the trial below, and states in his brief, that he does not rely upon a cause of action for malicious prosecution, or for abuse of process, or for false imprisonment. It would seem that plaintiff, as he apparently concedes, has not stated a case against Drs. Kenneth H. McGill and Thomas H. Wright, Jr. for malicious prosecution, *Dunbar v. Greenlaw, supra; Fisher v. Payne,* 93 Fla. 1085, 1093, 113 So. 378; or a case for false imprisonment, *Dunbar v. Greenlaw, supra; Pennell v. Cummings, supra; Ussery v. Haynes,* 344 Mo. 530, 127 S.W. 2d 410; *Dyer v. Dyer,* 178 Tenn. 234, 156 S.W. 2d 445; *Mezullo v. Maletz,* (1954), 331 Mass. 233, 118 N.E. 2d 356;

or for abuse of process, as there is no allegation that Drs. Kenneth H. McGill and Thomas H. Wright, Jr., or either of them, had an ulterior or wrongful purpose in making their affidavits, or conspired with Dr. John C. McGill in his alleged ulterior or wrongful purpose, *Barnette v. Woody,* 242 N.C. 424, 88 S.E. 2d 223; 72 C.J.S., Process, p. 1189.

Plaintiff says in his brief that he has not placed any precise label on his cause of action, and it is not necessary for him to do so. Plaintiff apparently presents his case against Drs. Kenneth H. McGill and Thomas H. Wright, Jr. as a malpractice suit. The nature of his allegations and charge against these two physicians would seem to be that of libel. *Dunbar v. Greenlaw, supra; Perkins v. Mitchell,* 31 Barb., N.Y. 461, 465; Cooley on Torts, 4th Ed., Ch. 7, Sec. 145, p. 494.

The rule in this jurisdiction is that a defamatory statement made by a witness in the due course of a judicial proceeding, which is material to the inquiry, is absolutely privileged, and cannot be made the basis of an action for libel or slander, even though the testimony is given with express malice and knowledge of its falsity. *Jarman v. Offutt,* 239 N.C. 468, 80 S.E. 2d 248; *Godette v. Gaskill,* 151 N.C. 52, 65 S.E. 612; *Ramsey v. Cheek,* 109 N.C. 270, 13 S.E. 775. The great weight of American authority supports this rule. See cases cited in Annotations 12 A.L.R. 1247, 81 A.L.R. 1119, 54 A.L.R. 2d 1298; 22 L.R.A. 836 Note; Cooley on Torts, 4th Ed., Ch. 7, Sec. 153, p. 527; 53 C.J.S., Libel and Slander, pp. 180-181.

We held in *Jarman v. Offutt, supra,* that a proceeding to commit an alleged mentally disordered person to a State Hospital for the Mentally Disordered under the procedure set forth in G.S. 122-43 and G.S. 122-46 is a judicial proceeding within the rule of absolute privilege.

The contents of the affidavits of Drs. Kenneth H. McGill and Thomas H. Wright, Jr. are not set forth in the complaint. That the recitals in these affidavits were material and pertinent to the inquiry before the Clerk of the Superior Court of Cleveland County seem manifest.

In *Jarman v. Offutt* this Court said: "Ordinarily, statements made in an affidavit which are pertinent to matters involved in a judicial proceeding, or which the affiant has reasonable grounds to believe are pertinent, are privileged, and, although defamatory, are not actionable." See also, Cooley on Torts, 4th Ed., Ch. 7, Sec. 156; Restatement of the Law of Torts, p. 233, Sec. 588.

Physicians, who are witnesses, in judicial proceedings to commit an alleged mentally disordered person for confinement, have been accorded such absolute immunity from civil liability for

their material and pertinent affidavits, certificates and testimony. *Jarman v. Offutt, supra; Dunbar v. Greenlaw, supra; Dyer v. Dyer, supra; Corcoran v. Jerrel,* 185 Iowa 532, 170 N.W. 776, 2 A.L.R. 1579; *Fisher v. Payne, supra; Hager v. Major,* 353 Mo. 1166, 186 S.W. 2d 564, 158 A.L.R. 584; *Perkins v. Mitchell, supra; Linder v. Foster,* 209 Minn. 43, 295 N.W. 299 (physician regarded as a quasi judicial officer). See *Reycraft v. McDonald,* 194 Mich. 500, 160 N.W. 836.

There is contrary authority. *Williams v. LeBar,* 141 Pa. 149, 151, 21 A. 525 (a brief Per Curiam Opinion); *Ayers v. Russell,* 50 Hun. 282, 3 N.Y.S. 338; and *Miller v. West,* 165 Md. 245, 167 A. 696 (dictum);—the last two cases are cited and relied on in plaintiff's brief—were decided upon the issue of ordinary or reasonable care of the physician without cognizance of the witness privilege and immunity. In *Ayers v. Russell,* Ingalls, J., dissenting, said: "It would seem that the certificates made by the defendants should also be regarded as privileged communications." The correctness of the decision in *Ayers v. Russell* has been questioned in *Brady v. Collom,* 68 R.I. 299, 27 A. 2d 311. Also *Hall v. Semple,* 3 Foster and Finlayson 337, 176 English Reports, Full Reprint 151, and *Harnett v. Fisher,* 16 British Ruling Cases 238—both cases cited and relied on by plaintiff. *Hall v. Semple* was decided upon the issue of ordinary or reasonable care of a physician acting under a lunacy statute very different from the North Carolina Act. It would seem that the English Act did not provide for a hearing and order of commitment by a public officer like our Act. In that case the defendant and one Guy, a surgeon, signed certificates that plaintiff was of unsound mind. Plaintiff's wife took these certificates to an asylum, whose manager sent men at her instance, who, under the authority of the certificates, next night seized plaintiff, and forcibly carried him to the asylum. Lord Blanesburgh, one of the Judges delivering an opinion in *Harnett v. Fisher,* said: "The point under *Hall v. Semple* (1862) 3 Fost. & F. 337, 358, remains where it was left by this House in *Everett v. Griffiths* (1921) 1 A.C. 631-H.L. There the correctness of that decision was assumed but not decided. Now its correctness is no longer challenged."

Some authorities deny the pertinent witness privilege to a physician in a lunacy proceeding if the tribunal lacks jurisdiction. *Beckham v. Cline,* 151 Fla. 481, 10 So. 2d 419, 145 A.L.R. 705; *Hager v. Major, supra; Perkins v. Mitchell, supra;* 158 A.L.R. 592 Note. See also, 70 C.J.S., Physicians and Surgeons, p. 972.

*Mezullo v. Maletz, supra,* was an action against a physician for signing a pertinent certificate in a lunacy commitment proceeding heard upon a demurrer to plaintiff's declaration. Plaintiff alleged in the first count that the defendant negligently per-

formed a mental examination of her, and signed a certificate to the effect that she was insane or of unsound mind, and that as a result of such negligence "plaintiff . . . was committed" to a State Institution for the Insane. The second count alleged in substance that defendant "did maliciously and in bad faith execute and sign a certificate designed by law for the commitment of individuals to State Institutions for the Insane," when he "knew or should have known" that plaintiff was sane, and that plaintiff as a result was "caused to be confined in and committed to a State Institution for the Insane." The Court said: "But whatever the law may have been formerly on this subject it is now settled that words spoken by a witness in the course of judicial proceedings which are pertinent to the matter in hearing are absolutely privileged, even if uttered maliciously or in bad faith. Citing authority. And this is the prevailing view elsewhere. Citing authority. If a physician signing a certificate is entitled to the privilege of a witness—and the Niven Case so holds—then it would follow that he does not lose it on proof of malice or bad faith." The allegations of the third count are in substance that defendant "wilfully conspired with the plaintiff's husband to unlawfully and improperly have the . . . plaintiff committed as an insane person" when the defendant knew that the plaintiff was sane; that in furtherance of the conspiracy the defendant "did sign or execute a certificate of commitment" whereby plaintiff was seized and committed; and deprived of her liberty and suffered physical and mental harm. The Supreme Judicial Court of Massachusetts affirmed the order of the lower court sustaining the demurrer to the declaration.

*Dunbar v. Greenlaw, supra,* was a suit against a physician. Plaintiff accused him of having erroneously certified in ancillary, emergency, detention proceedings, under the Maine Act, without sufficient inquiry or examination, that plaintiff was insane. Plaintiff was confined in a State Hospital, and claimed resultant damage. The amended declaration contains the following recitation of the standard of care legally required by plaintiff from the defendant, and of defendant's failure to fulfill it:

" 'It had then and there become the duty of the defendant *to exercise reasonable and ordinary care, skill and diligence* in an examination of the plaintiff to ascertain his true mental condition *to make a prudent and careful* inquiry and to obtain proof whether he was sane or insane and it also became the duty of the defendant *to exercise his best and reasonable and proper judgment* to the plaintiff's sanity . . . the said defendant . . . *made a false, pretended and grossly negligent examination* of the plaintiff as to his mental condition . . . the defendant failed and neglected *to use or to exercise reasonable and ordinary care, skill and diligence* in such examination . . . and the defendant failed *to make a prudent*

BAILEY *v.* McGILL.

*and careful inquiry* and to obtain proof as to the sanity or insanity of the plaintiff, and failed *to exercise his best, reasonable and proper judgment* as to to the plaintiff's sanity but *with gross and culpable negligence* without adequate and proper examination of the plaintiff, the defendant made and delivered said certificate.' (Emphasis supplied.)"

Mr. Justice Sullivan delivered for the Supreme Judicial Court of Maine on 16 December 1956 a very scholarly and well reasoned opinion. In his opinion he said: "The plaintiff presents his case as a malpractice suit. The nature of the charge would seem to be that of libel, citing authorities; rather than of false imprisonment, citing authority; or malicious prosecution, citing authority." The Court held that a physician, whose certificate of insanity in insanity detention proceedings was allegedly product of gross negligence, was immune from tort liability to person thereafter committed to state institution, in view of absolute privilege of physician as witness in lunacy proceeding from civil liability for his pertinent certification, and sustained defendant's exceptions to the overruling of his demurrer to plaintiff's declaration by the lower court.

Plaintiff has not challenged the regularity of the judicial proceeding before the Clerk of the Superior Court of Cleveland County in which plaintiff was committed to a State Hospital for the Mentally Disordered, nor has he contended that the Clerk had no jurisdiction in the proceeding. The pertinent affidavits made in this proceeding by direction of the Clerk by Drs. Kenneth H. McGill and Thomas H. Wright, Jr. were absolutely privileged, even if made maliciously or in bad faith. Plaintiff's allegations against Drs. Kenneth H. McGill and Thomas H. Wright, Jr. do not state a cause of action against them, and the lower court properly sustained their demurrers *ore tenus.*

In this Court Drs. Kenneth H. McGill and Thomas H. Wright, Jr. demur *ore tenus* to the complaint, and move the Supreme Court to dismiss the action against them on the ground that the complaint does not state facts sufficient to constitute a cause of action against them. As the complaint constitutes a statement of a defective cause of action against the above named two physicians, the motion by them to dismiss is allowed. *Cotton Mills Co. v. Duplan Corp.,* 246 N.C. 88, 97 S.E. 2d 449; *Scott v. Veneer Co.,* 240 N.C. 73, 81 S.E. 2d 146.

We are next confronted with the question as to whether the allegations of the complaint state facts sufficient to constitute a cause of action against Dr. John C. McGill.

"The rule is that if the complaint is good in any respect, or to any extent, it may not be overthrown by demurrer for failure to state a cause of action." *Batchelor v. Mitchell,* 238 N.C. 351, 78 S.E. 2d 240.

These are the essential allegations against Dr. John C. Mc-Gill: The relationship of physician and patient existed between him and plaintiff. Before 15 October 1954 Dr. John C. McGill had various conversations and conferences with plaintiff's parents, and by virtue of his position as a physician, through these conversations and conferences, influenced, persuaded and caused plaintiff's parents to execute and file an affidavit with the Clerk of the Superior Court of Cleveland County, stating in substance that plaintiff was suffering from some mental disorder, and was in need of observation and admission to the State Hospital for the Insane. That plaintiff's parents in executing this affidavit acted in complete reliance on Dr. John C. McGill's representation to them that plaintiff was insane. *Dr. John C. McGill in advising and influencing plaintiff's parents to execute and file this affidavit acted solely through ill will and malice toward plaintiff growing out of his anxiety to rid himself of plaintiff as a patient, because he knew plaintiff was suffering from an incurable case of hemophilia, and did not respond to his treatment.* At the request, advice and recommendation of Dr. John C. McGill, the Clerk of the Superior Court of Cleveland County, pursuant to G.S. 122-43, directed Drs. Kenneth H. McGill and Thomas H. Wright, Jr. to make an examination of plaintiff. Dr. John C. McGill, acting through ill will and malice toward plaintiff, and using his influence as a brother physician, influenced and caused Drs. Kenneth H. McGill, his brother, and Thomas H. Wright, Jr., to make and execute the necessary affidavits required by statute for committing plaintiff to the State Hospital for the Insane, without making the examination required by G.S. 122-43. About 18 October 1954 plaintiff was carried to Morganton, and there admitted in the State Hospital for the Insane, where he was forced to stay for 30 days. Plaintiff was not insane, or in need of mental treatment, and had never been in such condition in his life. Then follows the allegations of damages.

Accepting the allegations of the complaint against Dr. John C. McGill as true, and construing them with the liberality we are required to do on a demurrer, it appears that Dr. John C. McGill maliciously perverted the proceeding to commit a mentally disordered person to a State Hospital for the Mentally Disordered for observation and treatment, to the purpose of having plaintiff, who was not mentally disordered, committed to such a hospital and there confined for 30 days, to the end of ridding himself of plaintiff as a patient, which was a purpose and result not warranted by the proceeding authorized by G.S. 122-43 and G.S. 122-46.                    ,

Plaintiff has alleged a cause of action against Dr. John C. McGill for abuse of process. *Davenport v. Lynch,* 51 N.C. 545;

*Getsinger v. Corbell,* 188 N.C. 553, 125 S.E. 180; *Coulter v. Coulter,* 73 Colo. 144, 214 P. 400 (this case cites our case of *Davenport v. Lynch).* See *Barnette v. Woody, supra,* p. 431 of our Reports, and p. 228 in 88 S.E. 2d.

Plaintiff's counsel stated in the lower court, and here, that they do not rely upon a cause of action for abuse of process. This Court said in *Bizzell v. Equipment Co.,* 182 N.C. 98, 108 S.E. 439: "It is also fully recognized that an attorney, by virtue of his office and ordinary employment in a case, has no implied power . . . to enter into stipulations or agreements which sensibly impair such client's substantial rights and interests presented and involved in the litigation."

In 7 C.J.S., Attorney and Client, p. 922, it is written: ". . . in the absence of express authority, an attorney generally has no power, by stipulation, agreement, or otherwise, to waive or surrender the substantial legal rights of his client . . . ." See *S. v. Barley,* 240 N.C. 253, 81 S.E. 2d 772.

There is nothing in the record to show that plaintiff expressly authorized his counsel to say that they did not rely upon a cause of action for abuse of process, and, therefore, such statement is not binding on him.

The judgment sustaining the demurrers of Drs. Kenneth H. McGill and Thomas H. Wright, Jr. is sustained, and the action against them is dismissed; the judgment sustaining the demurrer of Dr. John C. McGill is reversed.

As to Dr. Kenneth H. McGill and Dr. Thomas H. Wright Jr.
Affirmed and action dismissed.
As to Dr. John C. McGill
Reversed.

JOHNSON, J., concurs in result.